UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin PRECIADO-CORDOBAS, Carlos Escobar, Luis Miguel Ariza-Sierra, Mario Alberto Guzman-Angarita, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Luis Miguel ARIZA-SIERRA, Martin Preciado-Cordobas, Carlos Escobar, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Mario Alberto GUZMAN-ANGARITA, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Luis Miguel ARIZA-SIERRA, Carlos Escobar, Martin Preciado-Cordobas, Mario Alberto Guzman-Angarita, Defendants-Appellants.

Nos. 88-5276, 89-5134, 89-5138 and 91-6094.

United States Court of Appeals, Eleventh Circuit.

Jan. 27, 1993.

---

Milton Hirsch, Miami, FL, for Martin Preciado–Cordobas, Carlos Escobar and Luis Miguel Ariza–Sierra.

Hal Kessler, Miami, Miami Beach, FL and San Francisco, CA, for Mario Alberto Guzman–Angarita.

Humberto J. Pena, Zuckerman, Spaeder, Taylor & Evans, Miami, FL, Sheryl Lowenthal, Coral Gables, FL, for amicus Florida Ass'n of Criminal Defense Lawyers.

Phillip DiRosa, Linda C. Hertz and Mayra R. Lichter, Asst. U.S. Attys., Miami, FL, for U.S.

Before DUBINA and BLACK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

During the appellants' consolidated jury trial on drug and conspiracy charges, the court reporter's recording equipment malfunctioned, rendering his notes of much of the closing arguments, the jury charge and the motions for judgment of acquittal illegible and impossible to transcribe. This case has been previously remanded twice, first to reconstruct the jury charge and the second time to recall the closing arguments. In their third appearance before this court the appellants claim they are entitled to a new trial because of the inability of their new appellate counsel to examine a verbatim transcript of the closing arguments. We hold that the record has been sufficiently rehabilitated for the appellants to receive effective appellate review of their trial, find an alleged comment by the prosecutor to be harmless and affirm the convictions.

## I. BACKGROUND

On October 19, 1987, Martin Preciado–Cordobas, Carlos Escobar, Luis Miguel Ariza–Sierra and Mario Alberto Guzman–Angarita were apprehended aboard a small vessel carrying nearly five tons of marijuana from Colombia to the Bahamas. The appellants' boat, the Coral Reef, was only forty feet long and nine feet across at its widest point and was packed with marijuana in every available space. The United States Coast Guard Cutter Chase initially spotted the Coral Reef while patrolling the windward passage between Haiti and Cuba. The Chase's crew observed the Coral Reef riding low in the water and flying no national flag. As the Chase approached, the crew also noticed that the Coral Reef had no name or registration number painted on its hull. Crew members from the Chase could smell the bulk marijuana when they were still 15 to 30 feet away from the Coral Reef.

A boarding party officer requested to speak to the captain of the Coral Reef. Alfonso Barker–Hernandez stepped forward and identified himself as the captain. Barker–Hernandez and the appellants were the only five persons aboard the boat. Barker–Hernandez's case was eventually severed from the trial of the appellants because his duress defense was antagonistic to that of the appellants. He claimed that the appellants forced him aboard the Coral Reef at gunpoint and also coerced him to present himself as the captain. Barker–Hernandez is not a party to this appeal.

In response to questions from the Coast Guard personnel, Barker–Hernandez acknowledged that the Coral Reef was flying no national flag and that it was transporting marijuana. He granted the Coast Guard request to board the Coral Reef.

The boarding party found no logs, customs clearance papers, cargo manifests, registry papers, bills of lading, fishing gear or legitimate cargo. They did, however, see approximately 200 bales of marijuana stacked in the pilot house, under the bunks, in the unsecured holds and in the engine room. The appellants and Barker–Hernandez were arrested and the Coral Reef seized.

### A. Proceedings in the District Court

Guzman–Angarita was the only appellant to testify during the consolidated jury trial in the United States District Court for the

Southern District of Florida. He stated that neither he nor any of the other appellants knew the Coral Reef was carrying marijuana until they went aboard the boat from a smaller transport some ten miles out at sea off the Colombian coast. They thought they would be transporting coffee and tobacco. Only the captain, Barker–Hernandez, knew about the marijuana and he threatened the appellants when they objected to the presence of the contraband cargo. According to Guzman–Angarita, the appellants did not try to overpower the captain because they were afraid that they or their families would be harmed by the Colombian drug cartels if they refused to cooperate. However, he also testified that the appellants attempted to throw the marijuana overboard and that they planned to refuse to unload the marijuana in the Bahamas.

All the appellants were convicted of possession with intent to distribute at least 1000 kilograms of marijuana aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 1903(a) and 18 U.S.C. § 2, and conspiracy to commit those substantive offenses, in violation of 46 U.S.C. § 1903(j).

Shortly after the trial and sentencing, the district judge held a hearing at which he advised all the lawyers that the court reporter was unable to reproduce counsels' closing arguments, the jury instructions and the motions for judgment of acquittal made pursuant to Fed.R.Crim.P. 29. Apparently, there was a defective ribbon in the stenotype machine used by the court reporter to take down the trial proceedings. Because of that defective ribbon the notes

of those last parts of the trial were not legible. The tape recording of the trial that was supposed to function as a backup either could not be found or was unintelligible.

The appellants, all of whom except Guzman–Angarita had new appointed counsel for appeal, moved the district court for a new trial on grounds that they could not effectively appeal their convictions without a complete transcript. The district court denied the motions without prejudice to the defendants' right to proceed under Fed. R.App.P. 10(c).[1] The appellants declined to prepare their own statement of the missing evidence as permitted by Rule 10(c).

### B. The First Limited Remand

The appellants timely filed notices of appeal and moved for a limited remand pursuant to the authority of *United States v. Taylor,* 607 F.2d 153 (5th Cir.1979),[2] to determine whether the district court's written jury charge could be included in the transcript in place of the unrecorded oral charge. An administrative panel of this court granted that motion without a hearing. After a *Taylor* hearing, the magistrate judge recommended and the district court found, based upon the certification of the court reporter, that the instructions delivered orally to the jury were identical to those contained in the judge's written copy. This finding of fact was based on the testimony of the trial judge's court reporter that the judge always read his jury instructions verbatim from his prepared text.[3] The written charge was made a part of the record.

---

1. Fed.R.App.P. 10(c) then provided:

 If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the

 clerk of the district court in the record on appeal.

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit Court of Appeals handed down before October 1, 1981.

3. The appellants initially argued that this general certification was inadequate to satisfy *Taylor.* We disagree. The magistrate judge correctly concluded that the use of this habit-type evidence was sufficiently persuasive to satisfy *Taylor. See Loughan v. Firestone Tire & Rubber Co.,*

## C. The Second Limited Remand

After the first limited remand, the case returned to this court and appellants raised as one of their grounds for reversal a violation of the Court Reporter Act. *United States v. Preciado–Cordobas*, 923 F.2d 159 (11th Cir.1991) (*Preciado–Cordobas I*). The challenge focused on the absence of the closing arguments in the trial transcript.

Again, we remanded, this time pursuant to Fed.R.App.P. 10(e),[4] directing the district court to attempt to reconstruct the closing arguments. *Preciado–Cordobas I*, 923 F.2d at 160. We advised the district judge that in attempting to reconstruct the record, he "may use his notes, the [court] reporter's notes, and, of course, the testimony of witnesses, including the appellant[s'] trial attorney[s]." *Id.* at 160–61. Unfortunately, Judge Eugene Spellman, the trial judge, died shortly after the opinion in *Preciado–Cordobas I* was issued, but before the reconstruction hearing. Consequently, we do not have the judge's notes or recollections of the trial that might have proven beneficial in recalling the record.

## D. The Reconstruction Hearing

The magistrate judge took testimony and evidence from the prosecutor and the trial defense attorneys in an effort to reconstitute the record. All four of the appellants' trial lawyers participated in the hearing and testified about what they remembered from the trial and possible bases for appeal.

The government produced a partial transcript of the closing arguments. Sometime in early 1991, notes were found that the court reporter, Mario Cantillo, had typed

during the trial. The government subpoenaed Cantillo to try to recall the closing arguments from his notes. Cantillo's transcription was admitted into evidence at the hearing. The transcript contains a portion of the prosecutor's initial closing argument, some from that of Jose Batista, counsel for Ariza–Sierra, and a portion by Mario Cano, the attorney for Escobar. A certificate by Cantillo at the end of the transcript recounts in part:

> I state that what is dictated on this cassette which may or may not be transcribed was dictated from notes, the majority of which were not legible because apparently there was a defective ribbon on my machine which was printing legibly for only some of [the prosecutor's] closing argument, some of Mr. Batista's closing, but none of the rest of counsel including [the prosecutor's] final rebuttal argument, all of which became completely illegible due to that defective ribbon. . . .

> It was only when I was asked to transcribe those portions did I realize the extent of the unreadable notes I had.

> Obviously there was a tape recording of the proceedings which was used to make a transcript of what was transcribed [previously]. As far as the tape recording for the specific arguments that were requested to be transcribed I was told by [the reporter who prepared the trial transcript] either that the tape could not be found or that what was thought to be the tape recording was also untranscribable.

> In any event I certify that the dictated portion that is at the beginning of the tape was dictated to the best of my abili-

749 F.2d 1519, 1523 (11th Cir.1985) (habit evidence "allows the trier of facts to infer that the habit was conformed with on a particular occasion"); Fed.R.Evid. 406 advisory committee's notes ("Agreement is general that habit evidence is highly persuasive as proof of conduct on a particular occasion.").

4. Fed.R.App.P. 10(e) provides:
 If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record

made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the court of appeals.

ty, the balance of which cannot be transcribed.

(Exhibit 3, pp. 16–17).

During the hearing, all the parties agreed that this partial transcript could not, by itself, constitute a reproduction of the closing arguments. The government sought to remedy that insufficiency by introducing the prosecutor's trial notes, the testimony of the defendants' trial lawyers and the written trial notes of those defense attorneys who could find them. The government also introduced the prosecutor's written effort to reconstruct his own closing argument and to summarize the arguments of defense counsel. In addition, the government provided the notes the prosecutor, Assistant United States Attorney Phillip DiRosa, prepared before trial for use during his own closing argument. DiRosa acknowledged that he regularly departed from his prepared notes during a closing argument. Also, DiRosa stated that he did not recall a sidebar conference or an objection by any of the defendants' counsel during his closing argument. He added that there may have in fact been an objection and sidebar conference, but he simply could not remember.

The government also placed into evidence DiRosa's notes made during the defendants' closing statements. These brief notes were merely highlights of defense accounts of the evidence to which DiRosa might want to respond during his rebuttal. Also, DiRosa prepared and the government furnished a document entitled "Reconstruction of Closing Arguments," which purported to be an almost verbatim text of the prosecutor's closing argument and a summary of the arguments of defense counsel.

Ariza–Sierra's trial counsel, Jose Batista, was unable to track down his notes from the trial. He had no recollection of the closing arguments in this case, but believed that he took 15 to 20 minutes for this purpose. Batista also testified that the partial transcript prepared by the court reporter from the mostly illegible notes did not reflect his entire closing argument. Batista did not refer to any error made during the unrecorded part of the trial. Guzman–Angarita's trial counsel, Rene Palomino, was unable to locate his case file and could not recall the specifics of his closing argument or any error at the trial.

Fernando Heria, the attorney for Preciado–Cordobas, had the brief notes he made during DiRosa's closing argument. Heria related that he believed the prosecutor had violated the fifth amendment privilege against compelled self-incrimination of some of the defendants during the government's concluding argument. Heria recalled that the prosecutor said something to the effect that "Just because one defendant confessed does not mean that the others who did not confess are not guilty. We cannot get everyone to confess."

According to Heria, he objected to this line of argument and moved for a mistrial. Judge Spellman held a side bar conference, and opined that the question was "a close one," but declined to grant a mistrial. However, the judge did give a cautionary instruction to the jury. Heria added that he advised his former client's new appellate counsel to obtain a transcript of the closing arguments because he felt that the prosecutor's comment was a strong issue for appeal.

The trial attorney for Escobar, Mario Cano, also found the notes he made when preparing his closing argument. In his opinion these notes, when combined with the partial transcript prepared by the court reporter, while not verbatim, represented all of the content of his closing argument to the jury, but did not reflect any objections which may have been made either by defense counsel or the prosecutor. Cano could not remember whether any such objections were actually made.

The magistrate judge recommended and the district court found that "the closing arguments at the trial of this case have been reconstructed as much as possible under the circumstances." In response to the earlier panel's order to "transmit forthwith to this court a transcript of the hearing and its order reconstructing the record or explaining why the same cannot be done," *Preciado–Cordobas I*, 923 F.2d at 161, the district court directed that six items be

submitted to this court "as the record of the closing arguments at trial:" (1) the certified transcript of the hearing before the magistrate judge; (2) the government's response to the defendants' Motion for New Trial; (3) the government's Reconstruction of Closing Arguments; (4) the certified transcript of those parts of the closing arguments that were legible enough for the court reporter to transcribe; (5) and (6) the notes of trial counsel Heria and Cano.

Neither the magistrate judge nor the district court ventured any opinion as to whether the evidence or the reconstructed closing arguments provided an accurate account of what transpired during the closing arguments sufficient to permit an effective appellate review. Rather, the magistrate judge wrote, "The testimony presented at the hearing and in the record outlines a substantial portion of the closing arguments made in this case. Whether the pieces of evidence combine to constitute a reconstructed record sufficient for appellate review is ultimately a question which must be addressed by the Court of Appeals for the Eleventh Circuit."

## II. THE LEGAL STANDARDS

 The Court Reporter Act requires that a reporter shall "record[ ] verbatim by shorthand, mechanical means, electronic sound recording, or any other method ... (1) all proceedings in criminal cases had in open court...." 28 U.S.C. § 753(b). However, a defendant is not automatically entitled to a new trial every time there is an omission from the transcript. *United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977).

 This court has developed a two-part standard for determining whether an incomplete trial transcript entitles a defendant to a new trial. If a defendant is represented by the same attorney at trial and on appeal, a new trial may be granted only if the defendant can show that the failure to record and preserve a specific portion of the trial visits a hardship on him and prejudices his appeal. *Id.* at 1305–06. However, if the defendant is represented on appeal by an attorney who did not participate in the trial, a new trial is necessary if there is a substantial and significant omission from the trial transcript. *Id.* at 1306. Whether there is a substantial and significant omission can be decided only after the district court has attempted to reconstruct those portions missing from the transcript. *Preciado–Cordobas I*, 923 F.2d at 160.

This dual standard in *Selva* represents an effort to ensure a criminal defendant's right to a meaningful appeal based on a complete transcript. *See Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964). The court reasoned that an appellate attorney who participated in the trial generally would be in a better position to point to specific prejudice resulting from the omission of parts of the proceeding from the record on appeal. *Selva*, 559 F.2d at 1306. On the other hand, an appellate attorney who was not involved in the trial often will be unable to identify and pursue irregularities that might otherwise entitle an appellant to relief. *Id.*[5] Thus, there seems to be a presumption of prejudice to appellants who are represented by new counsel on appeal when the record omissions are substantial and significant.[6]

---

**5.** "Much disagreement exists regarding the propriety of allowing the issue of whether omissions are significant enough to require reversal under the Court Reporter Act to turn on whether the appellant has a new lawyer or not." *United States v. Stefan*, 784 F.2d 1093, 1102 (11th Cir.1986). We note that at least three other circuits have expressly considered and rejected the *Selva* test, opting instead to require a showing of prejudice even when a defendant is represented by new counsel on appeal. *United States v. Sierra*, 981 F.2d 123 (3d Cir.1992); *United States v. Antoine*, 906 F.2d 1379, 1381

(9th Cir.1990); *United States v. Gallo,* 763 F.2d 1504, 1530–31 (6th Cir.1985).

**6.** Guzman–Angarita sought to benefit from the more relaxed standard of review for defendants who have different counsel on appeal by changing lawyers after his trial for that sole reason. His trial lawyer was supposed to pursue his appeal. However, when the record omissions became known, the trial counsel moved the district court for permission to withdraw so that *his client would receive the benefit of Selva.* That was precisely a result of *Selva* feared by an

There can be no substantial and significant omissions from a reconstructed record if, taken as a whole, it accords effective review on appeal. *United States v. Cashwell,* 950 F.2d 699, 704 (11th Cir. 1992).[7] If the reconstructed record discloses an accurate account of the trial so as to provide effective appellate review, the court of appeals must then address the assignments of error raised by the appellant. *Id.*

### III. ISSUE

The issue is whether the omissions that remain from the record before us are substantial and significant and foreclose effective appellate review. Our inquiry is confined to the omissions from the closing arguments. The jury instructions have been completely reconstructed in accordance with *Taylor,* and the motions for judgment of acquittal cannot be said to be a substantial and significant part of this trial. *See Stefan,* 784 F.2d at 1102.

### IV. DISCUSSION

#### A. *The Sufficiency of the Record*

Before addressing the significance of the missing parts of the trial transcript, we must determine what is actually missing. We observe that the appellants in this case are in almost the same position as they would be if they were represented by their trial lawyers on appeal. All the trial defense lawyers testified at the reconstruction hearing and we must assume they fully disclosed everything they remembered from the trial that was favorable to their former clients.

It is true that the passage of three and one-half years between the trial and the reconstruction hearing dimmed the memories of the participants. However, if a meritorious ground for appeal was forgotten during that time, the appellants' decision to seek reversal based solely on *Selva* is to blame. Everyone connected with the trial was told almost immediately after sentencing that the closing arguments could not be transcribed. Despite the knowledge that any error committed during closing arguments would not be memorialized, none of the appellants made an effort to prepare a statement of the error pursuant to Fed.R.App.P. 10(c), nor did anyone even make a note to a case file about grounds for a possible appeal.

Although the trial attorneys testified that the reconstituted record was not a verbatim account of the closing arguments, they were able to point to only one possible error that may have occurred during that stage of the trial. Except for the comment that Heria remembered about only one of the defendants having confessed, all the appellants demand a new trial based solely on the speculation that a trial attorney might have committed reversible error during those few minutes of the closing arguments that are missing.

Several factors must be considered in determining whether omissions are both substantial *and* significant. First, we look to the extent of the missing portions of the trial transcript as they relate to the remainder of the trial. That factor was important in *Stefan,* where the court found that a missing one hour and forty-five minute

---

earlier panel of our predecessor court. *United States v. Smith,* 591 F.2d 1105, 1109 n. 1 (5th Cir.1979) ("This anomalous rule [from *Selva*] seems to invite the manipulation of appellate causes to achieve unmerited reversals."); *see also United States v. Sierra,* 981 F.2d 123, 126 (3d Cir.1992) ("[T]he Selva approach would encourage the defendant to dismiss trial counsel and seek appointment of new counsel on appeal. This is contrary to well-established policy that the same counsel be retained for both the trial and appeal of a criminal case."). The other appellants were appointed new counsel on ap-

peal before the record omissions became known.

7. Some of the appellants argue that attempting to reconstruct the record is improper. They contend that when there are substantial and significant omissions from the original trial transcript, we should reverse the convictions without more and without giving the district court the opportunity to remedy those omissions. We find this argument to be without merit and will follow the binding precedent of this circuit found in *Cashwell, Preciado–Cordobas I* and *Selva.*

bench conference was not a significant omission from a three-month trial.

Here, the closing arguments of the prosecutor and four defense lawyers were a substantial and significant portion of a jury trial that lasted less than two full days. In the context of the entire trial, the arguments were an indispensable part of the proceedings, both in terms of time spent and potential influence on the outcome. If there had been a complete inability to recall the closing arguments, that omission would likely be significant enough to mandate a new trial. *See Selva* (complete absence of closing arguments warrants reversal). However, that is not the case here. There is evidence before us disclosing most, if not all, of the closing arguments. The record has been sufficiently recalled to enable review of the sole error alleged by the appellants' trial counsel and of the entire trial to search for other errors. We can address the prosecutor's identified comment by accepting the appellants' version of what occurred and resolving reasonable questions of interpretation in favor of the appellants. *See United States v. Smith*, 591 F.2d 1105, 1109 (5th Cir.1979).

Whether the gaps that remain in the reconstructed record are substantial and significant depends upon the likelihood that error which could be pursued on appeal occurred during those parts of the trial for which we do not have a verbatim transcript, and which the reconstruction does not allow us to review. This consideration was a primary concern in *Cashwell*. In that case the court held that the reconstructed voir dire proceeding, even though not a verbatim transcript, presented a "fair and accurate picture of what transpired during that phase of the trial," 950 F.2d at 704, such that the court could address the appellant's assignments of error that he had not waived at trial.

Again, were we faced with the complete absence of closing arguments from the record, a new trial would be the only remedy because the lack of a transcript of the arguments to the jury would be a substantial and significant omission. Of course, we do not have the original transcript of the closing arguments so we do not know each word said by the attorneys. However, we can tell, sometimes in great detail, the substance and direction of the defendants' closing arguments. They maintained to the jury that the government did not prove the defendants' knowledge or intent and that the defendants did not know of the Coral Reef's cargo until it was too late. The record contradicts the assertion that the defendants accused each other or otherwise made improper summations. They pointed the finger at the captain, who was tried separately from the appellants.

We also have a very detailed account of the prosecutor's closing argument. He summarized the evidence and attacked the credibility of the defendant who did testify and challenged the persuasiveness of the defense in general. With the exception of the prosecutor's comment about one of the defendants' confession, there is no suggestion anywhere in the reconstructed record that the prosecutor violated any of the defendants' rights in his jury argument, or that he even came dangerously close to a violation.

■ While there may have been flaws in the trial, it strains the imagination to conceive reversible error from all that we know of the trial from the actual transcript of the evidence and the reconstructed arguments before the jury. Mere speculation, entirely unsupported or contradicted by the record, that error may have been committed during an unrecorded part of the trial simply is not enough to support a finding that omissions are substantial and significant. *See Stefan* at 1102.

Even if we could imagine some error to have been committed during the parts of the closing arguments for which we have no record, virtually any error that may occur during that part of trial is reviewed under a harmless error standard. *Arizona v. Fulminante*, —— U.S. ——, —— – ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991) (part II of opinion of Rehnquist, C.J., for a majority of the Court) (harmless error analysis applies to "trial errors," but not to "structural defects" in trial); *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92

L.Ed.2d 460 (1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed."). As we conclude below, the evidence against the appellants was sufficiently compelling that any error that may have reasonably occurred on the facts of this case would be harmless beyond a reasonable doubt.[8]

### B. The Prosecutor's Comment

■ Having found the record sufficiently recalled for the purpose of appellate review, we turn to the only trial error urged by the appellants. Guzman–Angarita's trial attorney, Heria, testified at the reconstruction hearing that the prosecutor, in his argument to the jury, said something to the effect that "Just because one defendant confessed does not mean that the others who did not confess are not guilty. We cannot get everyone to confess." Accepting the appellants' version of this unreported statement, *United States v. Smith*, 591 F.2d 1105, 1109 (5th Cir.1979), we review the comment under a harmless error standard. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

As stated, we initially assume that Heria's notes and his memory accurately reflect the substance of the prosecutor's comment. If that is true, the statement is clearly harmless. Even if the statement could somehow be read as an improper comment on three of the defendants' exercise of their privilege against self-incrimination,[9] it is irrelevant in this case. None of the defendants confessed. If the comment was made during the closing argument as reflected in Heria's notes, the jury likely would have thought that the prosecutor was confused about the facts of the case and would have disregarded the factually incorrect and non-prejudicial statement. The statement, as reported in Heria's notes, was harmless, if error at all, because it can be said beyond a reasonable doubt that it did not contribute to the guilty verdict. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ Even if we could assume that Heria wrote down the statement incorrectly during the heat of trial and that the prosecutor used the word "testify" instead of the word "confess," the statement still would not rise to the level of reversible error. Not only did Heria testify that the district court gave a curative instruction to the jury after the comment, another instruction was given during the final charge of the court. That instruction made clear to the jury that the defendants did not have to testify and that their failure to testify could not be used against them. If the prosecutor's statement was improper and not remedied by the first instruction, it was certainly cured by the final charge to the jury. *See United States v. LeQuire*, 943 F.2d 1554, 1567 (11th Cir.1991). We can say beyond a reasonable doubt that the comment did not contribute to the guilty verdict. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

### V. CONCLUSION

We hold that the omissions that remain from the record as reconstructed by the

---

**8.** It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary. *E.g., United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). However, the completeness of the reconstruction convinces us that that is not a concern here.

**9.** Guzman–Angarita could not properly object to a comment on the exercise of his right not to testify because he did testify at the trial. Although his attorney objected during the trial, we treat the objection as having been made by the other three defendants, who had standing to do so. Before the trial the parties and district court agreed that any objection made by a defendant would be adopted by all the other defendants unless a defendant chose otherwise.

district court are not so substantial and significant as to warrant a new trial in which the appellants would receive another chance to retry their case based on the same evidence and arguments. While there are gaps in the verbatim transcript, the testimony of the trial attorneys and the documents provided to us by the district court provide a sufficiently complete picture of what transpired during the closing arguments. Based on that reconstructed record we have searched for errors that the appellants did not recall and have reviewed the appellants' claim that the prosecutor's improper comment entitles them to a new trial. We find no hint of any reversible error during the trial that the appellants did not bring to our attention. Also, we have resolved all ambiguities in favor of the appellants and still find the prosecutor's comment to be harmless, if error at all.

Therefore, the judgments of conviction are AFFIRMED.