[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 6, 2006
THOMAS K. KAHN
CLERK

No. 04-10903
Non-Argument Calendar

_____

D. C. Docket No. 03-00343-CR-T-30-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GERALD WRIGHT,
a.k.a. Fella,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 6, 2006)**

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Gerald Wright ("Wright"), a federal prisoner convicted of two drug-related offenses, appeals his convictions and sentence of 360 months of imprisonment. After a thorough review of the record and Wright's arguments, we **AFFIRM**.

## I.  BACKGROUND

On 13 August 2003, a federal grand jury indicted Wright, along with codefendants Terrell Wright ("Terrell")[1] and George Pearson, Jr. ("Pearson"), for various offenses related to the possession and distribution of cocaine and cocaine base, or "crack" cocaine.  Specifically, the indictment charged Wright with: (1) conspiracy to possess with intent to distribute fifty grams or more of a mixture containing a detectable amount of cocaine base and a quantity of cocaine, in violation of 21 U.S.C. § 846 ("Count 1"); (2) possession with intent to distribute fifty grams or more of a mixture containing a detectable amount of cocaine base and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii) ("Count 4"); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) ("Count 5").  The indictment indicated that the alleged criminal activity which formed the basis for Count 1 took place from an unknown date continuing up to and through 18 July 2003.  The activity which supported Counts 4 and 5 allegedly took place on or about 20 February 2003.

---

[1] Terrell Wright is Gerald Wright's brother.

At trial,[2] the government began its case by offering the testimony of Detective Ronald Heck, a police officer in the vice department of the City of Clearwater Police Department ("CPD"). According to Heck, in October 1997, a confidential informant suspected of misdemeanor drug activity indicated that he would operate as an informant for the police. Particularly, he indicated that he could purchase drugs from Gerald Wright. Accordingly, Heck testified that he coordinated two controlled drug purchases by the confidential informant at 1576 S. Greenwood Avenue, a residence allegedly occupied by Wright.[3] Following the two drug transactions, Heck obtained a search warrant for Wright's residence. The search warrant was executed and, in a room occupied by Wright and Terrell, CPD officers discovered twenty-four grams of crack cocaine, firearms, $1200 in cash, and Wright's state identification card. According to Heck, Wright admitted to cocaine possession after the 1997 raid. Wright was subsequently convicted of possession with intent to distribute cocaine in Florida state court. Heck's testimony about the 1997 investigation was admitted over counsel's objection on

---

[2] Terrell and Pearson pled guilty to the charges in the indictment. Accordingly, the government proceeded to trial against Wright.

[3] The residence was owned by George Pearson, Sr., who referred to Wright as his nephew although there was no biological connection between them. The record demonstrated that Wright, Terrell, and Pearson occupied and/or frequented the residence intermittently since 1993.

relevance and Federal Rule of Evidence 404(b) grounds.[4]

Next, the government offered the testimony of several CPD officers who recounted their investigation of drug activity at the Greenwood residence from December 2002 to February 2003. The officers testified that they coordinated several controlled purchases of crack cocaine at the residence during this time period. At each of these controlled purchases, the officers testified that their confidential informants were given crack cocaine by either Terrell or Pearson. On one occasion, however, in January 2003, a CPD officer testified that Wright was present for the controlled purchase. According to the officer, he and a confidential informant approached Wright and Pearson and asked them, "Are you tight?" R4 at 31. The officer testified that this was slang for asking whether Wright and Pearson had crack cocaine they were willing to sell. According to the officer, both Wright and Pearson indicated they had crack cocaine to sell, and the purchase was then executed. Based on these controlled buys, CPD officers obtained a search warrant of the Greenwood residence and discovered in Wright's bedroom, inter alia, crack cocaine, baggies containing cocaine powder, a firearm, a digital scale, Wright's state identification card, and correspondence addressed to Wright at the

---

[4] Despite overruling counsel's objections, the district court noted that it would reserve its ruling on whether Heck's testimony should be excluded pursuant on Federal Rule of Evidence 403.

Greenwood address. Subsequent analysis confirmed that Wright's fingerprints were on some of the baggies and containers holding cocaine and crack cocaine.

Next, the government offered the testimony of Christopher Goodloe and Jonathan Wade. Both were in prison on unrelated drug charges and had entered into plea agreements to assist in the prosecution of drug-related crimes. Both Goodloe and Wade testified that Wright had sold them crack cocaine on several occasions. In addition, Goodloe testified that Pearson and Terrell were street level dealers who received their supply from Wright.

Finally, the government offered the testimony of Matthew Desjardins, a police officer in the Largo Police Department. Desjardins testified that in July 2003, he and other officers coordinated and videotaped a controlled buy at a hotel involving a confidential informant, Pearson, and Terrell. Counsel for Wright objected to Desjardins's testimony about what was said during the drug transaction on hearsay grounds, but the district court overruled the objection. Counsel also objected to the videotape coming into evidence and being shown to the jury. Particularly, counsel argued that he believed the tape portrayed Terrell mentioning "my brother" and crack cocaine, and therefore the tape would implicate Wright without affording him the opportunity to cross-examine Terrell about his statements. Because the government noted that Pearson made the comment about

5

"my brother," however, the district court overruled the objection and allowed the tape into evidence.

After concluding the examination of Desjardins, the government rested. Counsel for Wright then moved for judgment of acquittal on the grounds that the government had not established the prima facie case for the charges in the indictment. The district court denied the motion. Following the presentation of Wright's defense, counsel for Wright renewed the motion for judgment of acquittal. The motion was denied and the district court proceeded to instruct the jury. Particularly, the district court instructed the jury that:

> Count One charges that the Defendant knowingly and willfully conspired with others to possess with intent to distribute or distribute a mixture or substance containing a detectable amount of cocaine base or cocaine. Count Four charges . . . that the Defendant possessed with intent to distribute a mixture or substance containing a detectable amount of cocaine base or cocaine.

R1-79 at Jury Instruction No. 11 (emphasis added). The court also explained that, due to the fact that the indictment charged that Wright conspired to possess with intent to distribute both cocaine base *and* cocaine, the indictment actually charged that the coconspirators conspired to commit "*two* separate, substantive crimes or offenses." Id. at Jury Instruction No. 14. The court further instructed that it was not necessary for the government to prove that Wright conspired to commit both offenses, but rather it would be sufficient if the government proved beyond a

6

reasonable doubt that Wright willfully conspired to commit one of the offenses.

During deliberations, the jury informed the district court that it was deadlocked on the conspiracy count. The district court consequently read the jury an Allen charge[5] and ordered the jury to continue deliberations. Subsequently, the jury returned a verdict and found Wright guilty on Counts 1 and 4 and not guilty on Count 5. A presentence investigation report ("PSI") set Wright's base offense level at 38 because the offense involved more than 1.5 kilograms or more of cocaine base. The PSI also recommended a two-level enhancement because police found a firearm in Wright's bedroom, which resulted in a sentencing range of 360 months to life imprisonment. After adopting the findings in the PSI, the district court sentenced Wright to 360 months of imprisonment on each count, to be served concurrently.

Wright makes five arguments on appeal. First, he argues that the district court improperly admitted: (1) Heck's testimony regarding the 1997 investigation of Wright; and (2) the 2003 videotape depicting Wright's coconspirators engaged in a drug transaction. Second, Wright argues that the district court materially altered the charges in the indictment by its jury instructions. Third, Wright argues

[5] See Lowenfield v. Phelps, 484 U.S. 231, 237-39, 108 S. Ct. 546, 550-52 (1987) (describing the district court practice of giving a supplemental jury instruction to a deadlocked jury that was first approved in Allen v. United States, 164 U.S. 492, 17 S. Ct. 154 (1896)).

that the district court erred by denying his motions for judgment of acquittal because insufficient evidence supported his convictions. Fourth, Wright contends that, by enhancing his sentence based on facts not found by the jury, the district court violated his Sixth Amendment rights pursuant to Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) and United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). Fifth, Wright argues that substantial omissions in the record preclude meaningful appellate review and necessitate a new trial.

## II. DISCUSSION

### A. District Court's Evidentiary Rulings

First, Wright argues that the district court erred by admitting (1) Heck's testimony about his 1997 investigation of Wright's drug-related activity and (2) a 2003 videotape depicting a controlled purchase of drugs from Pearson and Terell. We review the district court's rulings on the admissibility of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "An evidentiary ruling will stand unless the complaining party has shown a substantial prejudicial effect." United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir.) (citations omitted), cert. denied, 541 U.S. 1091, 124 S. Ct. 2829 (2004).

Pursuant to the Federal Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403.  In

addition, the federal rules provide that "[e]vidence of other crimes, wrongs, or acts

is not admissible to prove the character of a person in order to show action in

conformity therewith." FED. R. EVID. 404(b).  Such evidence is admissible,

however, to prove, inter alia, intent or knowledge. Id.  "[B]road discretion . . .

vested in the trial judge" to make a determination on admissibility of evidence

under Rules 404(b) and 403.  See United States v. Bloom, 538 F.2d 704, 708 (5th

Cir. 1976).

Based on these standards, we conclude that the district court's admission of

Heck's testimony regarding his 1997 investigation of Wright did not constitute an

abuse of discretion.  First, the district court did not err under Rule 404(b) because

the evidence challenged by Wright was not evidence of extrinsic acts within the

meaning of Rule 404(b); rather the evidence was probative of crimes charged in

the indictment.  In making this determination, we note that Count 1 in the

indictment indicated that the alleged conspiratorial activity began at an unknown

date.  Accordingly, evidence of drug distribution activity in 1997 falls within the

time period contemplated by the indictment and therefore the constraints of Rule

404(b) are not implicated.  See United States v. Ramsdale, 61 F.3d 825, 830 (11th

Cir. 1995) (affirming the admission of evidence of a prior drug-related arrest

9

because it took place within the time period during which the conspiracy was alleged in the indictment to have taken place).  Moreover, assuming that the 1997 investigation covered extrinsic acts, the evidence was admissible under Rule 404(b) because it was not admitted to demonstrate character propensity but rather was introduced to show Wright's intent to engage in a conspiracy to possess with the intent to distribute cocaine.  See United States v. McDowell, 705 F.2d 426, 429 (11th Cir. 1983) (affirming admission of evidence of a prior cocaine deal to show defendant's intent to possess cocaine with intent to distribute).  Likewise, the admission of the evidence was not error under Rule 403.  Although "temporal remoteness depreciates the probity of [an] extrinsic act," district courts are granted broad discretion in determining whether such an act "is too remote to be probative."  United States v. Pollock, 926 F.2d 1044, 1047 (11th Cir. 1991) (citation omitted) (affirming admission of evidence regarding a five year old conviction).  Thus, although the 1997 investigation took place six years before the conduct which formed the basis for the charges in Counts 4 and 5, the district court acted within its discretion to find that the 1997 investigation was sufficiently probative of the crime charged in Count 1 to outweigh any prejudice caused by the temporal remoteness of the investigation in relation to the other counts.  Accordingly, the admission of Heck's testimony did not constitute an abuse of

10

discretion under Rule 403.

Likewise, the district court did not abuse its discretion by admitting the 2003 videotape depicting a drug transaction between Terrell, Pearson, and a confidential informant. Although the evidence depicted acts extrinsic to the activity of Wright, the evidence was not improperly admitted under Rule 404(b) because it was relevant to establish the existence of a conspiracy to distribute cocaine between Wright, Terrell, and Pearson. See United States v. Cole, 755 F.2d 748, 766-67 (11th Cir. 1985) (affirming the admission of videotapes depicting conversations between coconspirators because they were probative of the existence and object of the drug distribution conspiracy alleged in the indictment). In addition, the videotape was necessary to complete the testimony of Goodloe who testified that Terrell and Pearson were street level dealers who received their supply from Wright. See United States v. Leavitt, 878 F.2d 1329, 1339 (11th Cir. 1985) (affirming the admission of evidence which explained the operation of the conspiracy and depicted "[a]cts in furtherance of the conspiracy"). Moreover, because this evidence was highly probative of how the conspiracy operated, the probativeness of the evidence outweighed any prejudice that may have resulted from the introduction of the evidence.

Accordingly, because testimony relating to the 1997 investigation and the

2003 videotape were relevant to the charged offenses and not unduly prejudicial, the district court did not abuse its discretion by admitting them at trial.

B.  Constructive Amendment of the Indictment

Next, Wright argues that the district court constructively amended the indictment by instructing the jury that it could find him guilty of conspiring to possess cocaine base or cocaine, when the indictment alleged that he conspired to possess cocaine base and cocaine.  We have held that "[a] constructive amendment to the indictment is reversible error per se."  United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002) (per curiam).  "A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment."  United States v. Castro, 89 F.3d 1443, 1452-53 (11th Cir. 1996) (citations omitted).  An improper amendment can occur through erroneous jury instructions.  Id. at 1453.  In determining whether an indictment was constructively amended, we look at whether the court's instructions, "viewed in context," literally or effectively expanded the indictment.  United States v. Behety, 32 F.3d 503, 508-09 (11th Cir. 1994) (citation omitted).  "[T]he law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means, and

12

accordingly the jury instruction may properly be framed in the disjunctive."

United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).

Based on these standards, we find that the district court did not improperly amend the indictment in its jury instructions. The indictment charged Wright with violating, inter alia, 21 U.S.C. §§ 841 and 846, which require that the government prove that Wright possessed and intended to distribute a "controlled substance." See United States v. Williams, 876 F.2d 1521, 1525 (11th Cir. 1989); see also United States v. Mejia, 97 F.3d 1391, 1392-93 (11th Cir.1996) (noting that to satisfy elements of §§ 841(a)(1) and 846, government need not prove particular substance involved, only that some controlled substance was involved). Using the conjunctive, the indictment alleged that Wright violated §§ 841 and 846 by possessing and intending to distribute the controlled substances of cocaine and cocaine base. Because the indictment thus alleged conjunctively two ways that Wright was alleged to have violated the statutes, the district court's jury instruction that the jury could find Wright guilty if it found that he possessed and intended to distribute either controlled substance was proper. See Simpson, 228 F.3d at 1300. Accordingly, we reject Wright's argument that the district court's jury instructions constructively amended the indictment.

13

C. Sufficiency of the Evidence

Wright next argues that the district court erred by denying his motions for judgment of acquittal because there was insufficient evidence to convict him of the conspiracy charge. Wright argues that the government had to prove more than his mere presence during the police raid or the existence of a buyer/seller relationship. Additionally, Wright suggests that the testimony by Goodloe and Wade lacked credibility and did not prove that he participated in a drug conspiracy. "In reviewing the sufficiency of the evidence, we view it de novo, but in the light most favorable to the government, and accepting all reasonable inferences which support the verdict in order to determine if there was substantial evidence from which a reasonable trier of fact could have concluded that the defendants were guilty beyond a reasonable doubt." United States v. Adkinson, 158 F.3d 1147, 1150 (11th Cir. 1998) (citation omitted). We generally grant credibility determinations "great deference." United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (citation omitted).

A district court may grant a motion for judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). In order to sustain a conviction under § 846, "the government must prove that there is an agreement by two or more persons to violate the narcotics

14

laws." United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir. 1990). "Mere presence at the scene is not enough; however, direct evidence of a conspiracy is not required." Id. (citations omitted). "Because the essential nature of conspiracy is secrecy, a conspiracy conviction may be based upon circumstantial evidence." Adkinson, 158 F.3d at 1153. In distinguishing between a buyer/seller arrangement and a conspiracy, we have indicated that "agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) (per curiam). "In order to convict a defendant for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), a jury must find first that the defendant possessed the controlled substance knowingly and wilfully, and second that he possessed the substance with the intent to distribute it." United States v. Anderson, 289 F.3d 1321, 1325 (11th Cir. 2002).

Our review of the record confirms that Wright's convictions were supported by sufficient evidence. The evidence at trial demonstrated a consistent pattern of drug-related activity being conducted from the Greenwood residence which Wright frequented and inhabited since 1997. Police officers coordinated numerous controlled drug purchases at the residence and a search warrant of the house led to the discovery of significant amounts of drugs, digital scales, baggies, and other

15

items related to the drug trade in Wright's bedroom. On one occasion, Wright admitted to a confidential informant that he had crack cocaine to sell. In addition, Goodloe and Wade testified that Wright sold them crack cocaine multiple times and described the conspiracy operated by Wright, Terrell, and Pearson. Their descriptions of how the coconspirators operated was corroborated by a videotape of Pearson and Terrell executing a drug transaction. Viewing this evidence in the light most favorable to the government, we find that this evidence was more than sufficient to sustain Wright's convictions for violating 21 U.S.C. §§ 841 and 846. Accordingly, the government's case rested on more than Wright's presence during the 2003 police raid. Rather, circumstantial evidence demonstrated that he had entered into an agreement with Terrell and Pearson to possess and distribute illegal narcotics. Moreover, while Goodloe and Wade provided testimony which directly implicated Wright, the district court, in denying Wright's Rule 29 motions, made credibility determinations which must be afforded deference on appeal. Moreover, with regard to the § 841 charge, the evidence demonstrated Wright's fingerprints on baggies of cocaine and other containers and items related to drug distribution. Accordingly, because the evidence was sufficient to establish beyond a reasonable doubt all of the essential elements of the conspiracy and possession charges, the district court did not err by denying Wright's motions for a judgment of acquittal.

16

D. *Blakely/Booker* Error

Next, Wright argues that the district court violated his Fifth and Sixth Amendment rights under Booker and Blakely by imposing a sentence based on facts that the jury did not find beyond a reasonable doubt. Specifically, Wright argues that his sentence was unconstitutional because it was based on: (1) a drug quantity greater than that found by the jury; and (2) his alleged possession of a firearm, after the jury had acquitted him of violating § 922(g). Because Wright made no constitutional objection to the imposition of his sentence in the district court, we review for plain error. See United States v. Burge, 407 F.3d 1183, __ (11th Cir. 2005). Under plain-error review, an appellant must show that there was (1) an error, (2) that is plain, (3) that affects the appellant's substantial rights, and (4) that affects the fairness, integrity, or public reputation of the judicial proceedings. Id.

In Booker, the Supreme Court held that "the Sixth Amendment as construed in Blakely does apply to the Sentencing Guidelines." Booker, 543 U.S. at ___, ___, 125 S. Ct. at 746. Accordingly, the Court held that it was constitutional error for a district court to enhance a defendant's sentence according to the Sentencing Guidelines based on facts not found by a jury. See Booker, 543 U.S. at __, 125 S. Ct. at 756 (finding constitutional error where the defendant's sentence was

17

enhanced based on drug quantities found by the sentencing judge above the amount determined by the jury verdict). In light of this determination, the Court determined that the federal Sentencing Guidelines were no longer mandatory, but rather could be considered in advisory capacity by district courts together with the factors listed in 18 U.S.C. § 3553(a). Booker, 543 U.S. at ___, 125 S.Ct. at 756-57. Construing the holding of Booker, our court has determined that, under the plain error analysis, the defendant bears the burden to demonstrate that Booker error affected his substantial rights. See United States v. Dowling, 403 F.3d 1242, 1247 (11th Cir. 2005). Accordingly, a defendant fails to meet the third prong of the plain error standard where "nothing in the record indicates that the judge might have imposed a different sentence" had the Sentencing Guidelines been employed in an advisory instead of binding fashion. Id.

Although the district court's enhancement of Wright's sentence constituted plain error because his sentence was enhanced based on facts not found by a jury, we conclude that Wright's sentence should not be reversed because he cannot demonstrate that the error affected his substantial rights. A thorough review of the sentencing transcript reveals that there is nothing to indicate that Wright would have received a different sentence had the sentencing judge applied the Sentencing Guidelines in an advisory manner. While Wright notes that the district judge

18

sentenced him on the low end of the range established by the Sentencing Guidelines, this fact alone does not establish sufficient prejudice under the plain error standard.  See United States v. Fields, __ F.3d __ , __ (11th Cir. 2005) (concluding that a district court's decision to sentence a defendant at the low end of the guidelines range without more was insufficient to establish defendant's burden on the third prong of the plain error test); see also United States v. Alcantara, No. No. 04-11372 (11th Cir. Jun. 7, 2005) (per curiam) (unpublished opinion) (same). Given that Wright can point to nothing else in the record to demonstrate that the district court would have imposed a lesser sentence under an advisory guidelines regime, he has failed to carry his burden of showing prejudice under the third prong of the plain error standard.  Moreover, we note that in addition to sentencing Wright pursuant to the Sentencing Guidelines, the district court made the independent assessment that "the sentence serves the sentencing goals of punishment and deterren[ce]." R9 at 18.  Because these determinations are part of the statutory sentencing factors listed in 18 U.S.C. § 3553(a) which we would have ordered the district court to consider had we remanded for resentencing, we conclude that the district court's error did not affect Wright's substantial rights. See United States v. Carroll, No. 04-14116 (11th Cir. Jun. 6, 2005) (per curiam) (unpublished opinion).  Accordingly, Wright has failed to show a reasonable

19

probability that he would have received a different sentence had the district court applied the Sentencing Guidelines in an advisory, rather than a mandatory, fashion, and therefore his Booker/Blakely claims fail under the plain error standard.[6]

E. Omissions in the Record

Finally, Wright argues that a new trial is required because substantial and significant omissions in the record prevent our court from engaging in meaningful review. Specifically, Wright notes that, despite his repeated requests, the trial transcripts from 20 November 2003, the day when the jury indicated that it was deadlocked, were not provided to him for review. According to Wright, although the missing records are not, alone, sufficient to warrant reversal of his conviction, in conjunction with the other errors, there is ample support for granting him a new trial.

"The Court Reporter Act requires that a reporter shall 'record verbatim . . .

---

[6] Although Wright's arguments that the district court erred at sentencing were framed as challenges to the constitutionality of his sentence, and therefore were analyzed under Booker for plain error, Wright made the ancillary argument that the district court could not enhance his sentence for possession of a firearm when the jury acquitted him on the § 922(g) charge. Our case law confirms, however, that a defendant may be acquitted of a firearm possession offense and be eligible for a sentence enhancement based on firearm possession. See United States v. Stanley, 24 F.3d 1314, 1322 (11th Cir. 1994). This possibility results from the fact that a different burden of proof governs the finding required for a conviction and the finding required to enhance a sentence. See id. In Wright's case, although the jury acquitted him on the § 922(g) charge, the district court was entitled to find that Wright was in possession of a firearm after one was found in a room that contained his state identification card and was alleged to be a room he inhabited regularly. See United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (affirming enhancement of sentence for drug conspiracy conviction based on evidence that firearm was found in defendant's residence along with other drug-related items).

20

all proceedings in criminal cases had in open court.'" United States v. Preciado-Cordobas, 981 F.2d 1206, 1212 (11th Cir. 1993) (quoting 28 U.S.C. § 753(b)). "[A] criminal defendant has a right to a record on appeal which includes a complete transcript of the proceedings at trial." United States v. Selva, 559 F.2d 1303, 1305 (5th Cir. 1977). "However, a defendant is not automatically entitled to a new trial every time there is an omission from the transcript." Preciado-Cordobas, 981 F.2d at 1212. "[I]f the defendant is represented on appeal by an attorney who did not participate in the trial, a new trial is necessary if there is a substantial and significant omission from the trial transcript." Id. "There can be no substantial and significant omissions from a record if, taken as a whole, the record affords effective review on appeal." United States v. Medina, 90 F.3d 459, 463 (11th Cir. 1996), superceded by statute on other grounds, United States v. Tinoco, 304 F.3d 1088, 1104-06 (11th Cir. 2002).

Based on these standards, we conclude that Wright is not entitled to a new trial because the record afforded Wright and our court sufficient information to effectively review the trial proceedings. Although Wright was not able to obtain a copy of the transcript from the 20 November 2003 proceeding by the time he filed his initial brief, he was able to obtain a copy of the transcript by the time he filed his reply brief. Moreover, the 20 November transcript was made part of the record

21

on appeal for our review. Accordingly, we have been able to review Wright's contentions that the district court committed error on 20 November and we find them meritless. Accordingly, because the missing transcript in question was provided both to Wright and our court, we find that the record did afford an opportunity for meaningful review of all of Wright's contentions. See United States v. Charles, 313 F.3d 1278, 1283 (11th Cir. 2002) (per curiam) (finding new trial not needed where the court was able to reconstruct the substance of the omitted materials and therefore the omission was not an impediment to meaningful review); Medina, 90 F.3d at 463. Therefore, Wright is not entitled to a new trial.

### III. CONCLUSION

Wright, a federal prisoner convicted on two counts related to his possession with intent to distribute illegal narcotics, appealed his convictions and sentence on several grounds. Upon our review of the record and the contentions of the parties, however, we find no reversible error. Accordingly, Wright's convictions and sentence are **AFFIRMED.**

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment affirming Wright's convictions because, as the court correctly concludes, Wright has not shown reversible error. I concur in the court's affirmance of Wright's sentences because precedent – namely <u>United States v. Rodriguez</u>, 398 F.3d 1291 (11th Cir. 2005), *reh'g en banc denied*, 406 F.3d 1261 (11th Cir. 2005), *cert. denied*, ___ U.S. ____, 125 S.Ct. 2935, 162 L.Ed.2d 866 (2005) – requires that we do so notwithstanding the fact that, as the Government's brief properly concedes, "the district court committed error that is plain by enhancing Wright's sentence, under a mandatory guidelines system, based on the court's finding as to a fact (drug quantity) not admitted by Wright or found by a jury." Appellee's Brief at 20. The court upholds Wright's sentences because Wright has not satisfied "the third prong of the plain error standard[, i.e.,] 'nothing in the record indicates that the judge might have imposed a different sentence' had the Sentencing Guidelines been employed in an advisory instead of binding fashion." <u>Ante</u> at 18 (quoting <u>United States v. Dowling</u>, 403 F.3d 1242, 1247 (11th Cir. 2005).[1] In other words, because Wright cannot point to something the district court said prior to or in the course of imposing sentence to indicate that, but for the mandatory nature of the Guidelines, he would have received sentences lower than

---

[1] <u>Dowling</u> is nothing more than a straight forward application of <u>Rodriguez</u>.

23

the Guidelines prescribed, he cannot show prejudice – that the error affected his "substantial rights."  In short, the district court failed to utter what I call "magic words," words that Wright, and we, could seize upon to conclude that he suffered prejudice.

We should never expect to find these magic words in the record of a sentencing hearing held pre-Booker.  Why so?  Because we judges are bound by the oath of office to uphold the law, whether we like it or not.  And the Guidelines are the law.  They were enacted by democratically empowered lawmakers, the Congress.[2]  If a judge is dissatisfied with the Guidelines system, or any of the sentences the Guidelines prescribe, the judge should take it up with the Congress (or the Sentencing Commission).  A sentencing hearing is not the appropriate forum for voicing such dissatisfaction, which is why most judges are not likely to tell the defendant that the sentence about to be imposed is unfair or unjust, but that  there is nothing the court can do about it.  By telling the defendant that his sentence is unfair or unjust, the judge invites (albeit unwittingly) the defendant "to persist in attacking his sentence on direct appeal and collateral review, notwithstanding that its substance and the manner of its imposition are legally correct.  After all, why should the defendant not appeal a sentence that even the judge criticized as too

---

[2]  To be sure, the Guidelines were framed by the U.S. Sentencing Commission, but the Commission submitted them to Congress, and Congress enacted them.

24

severe?"  United States v. Thompson, 422 F.3d 1285, 1303-04 (11th Cir. 2005)

(Tjoflat, J. specially concurring).  Indeed, "by openly disparaging the defendant's

sentence, the judge fosters disrespect for the rule of law."  Id. at 1304.

Avoiding this untoward consequence is what prompts judges to avoid the

magic words we look for.  As I observed in Thompson, this process – searching for

magic words –

> is as arbitrary as it is absurd.  A defendant is rewarded with a new
> sentencing hearing only if the sentencing judge took the entirely
> inappropriate step of publically criticizing the law that required him to
> impose the sentence.  In contrast, a defendant whose sentence was
> imposed without gratuitous comment by the sentencing judge is denied
> a new hearing.  "It [is] a mistake to infer from a district court's silence
> that the district court would not have made a different decision under a
> different sentencing scheme."  Silence often means nothing more than
> that an experienced judge understands his or her proper role in the
> criminal justice system.  Thus, the judge's comments or silence
> inevitably turns out to be poor circumstantial evidence of what the
> judge would do if freed from the constraints imposed by the
> Guidelines.

422 F.3d at 1305 (citation omitted) (quoting United States v. Ameline, 409 F.3d

1073, 1082 (9th Cir. 2005) (en banc)).

What the Booker sentencing scheme would look like was not even in the

realm of conjecture when the court sentenced Wright to concurrent prison terms of

360 months.  Because the mandatory scheme under which the court was operating

was so markedly different from the scheme the Supreme Court created in Booker,

25

the district judge in this case could not possibly have known what sentences he would have imposed had the Guidelines been advisory and the court, rather than the Sentencing Commission, was charged with the task of deciding which of the sentencing purposes set out in 18 U.S.C. § 3553(a)(2) Wright's sentences should achieve.

I have come full circle. Circuit precedent mandates that we affirm Wright's sentences. Obeying this law, I concur in the court's judgment.