[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 01, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-15414

_____

D. C. Docket No. 99-00507 CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEITH ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 1, 2002)**

Before ANDERSON, Chief Judge, DUBINA and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Defendant-Appellant Keith Anderson appeals his conviction for possession

with intent to distribute cocaine base (or "crack cocaine"), in violation of 21 U.S.C.

§ 841(a)(1) and 18 U.S.C. § 2, and the sentence of life imprisonment imposed by the district court as a result of that conviction. Anderson argues on appeal (1) that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he possessed crack cocaine with intent to distribute it, and (2) that the sentence should be vacated pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because both the indictment and the jury's verdict were silent as to the quantity of cocaine base involved in the crime. After thorough review, we affirm both the conviction and the sentence. The jury's verdict was supported by sufficient evidence, and any Apprendi error was harmless beyond a reasonable doubt in light of the facts of the case.

I.

On July 20, 1999, a federal grand jury sitting in the Southern District of Florida returned an indictment charging Anderson with possession with intent to distribute an unspecified amount of crack cocaine. Prior to trial, on June 2, 2000, the government filed notice of its intent to seek an enhanced penalty under 21 U.S.C. § 851, based on Anderson's four prior convictions for felony drug offenses.[1]

---

[1]The prior convictions, all of which were entered in the Florida state court, included three convictions for unlawful sale or delivery of cocaine on or near school property and one conviction for possession of cocaine.

At Anderson's one-day trial on June 20, 2000, the government presented the testimony of Edgar Rivera, a former police officer in Florida City, who described Anderson's crime. On April 27, 1998, Rivera operated a surveillance camera attached to a pole near the Ninth Avenue Market in Florida City, a location that he characterized as a "really high drug, high crime area." The camera, which allowed the officer to view activity in the area from a remote location, had been installed in an effort to monitor drug activity. While conducting the surveillance, Officer Rivera saw Anderson engage in what appeared to be drug sales. On two separate occasions that same day, Anderson retrieved a baggie from a utility pole attached to an electricity meter, conducted what appeared to the officer to be a narcotics transaction, rolled the baggie back up, and returned it to the pole. During the first transaction, Anderson was observed giving something to Lisa Glover, a known crack cocaine user, in exchange for bills, which he counted before putting in his pants pocket. In the second transaction, some of which was obstructed by a parked car, Anderson engaged in an exchange with Felix Jones, a known crack dealer. At the end of the transaction, Anderson was observed putting something in his pocket before returning the drugs to the same utility pole. After watching these transactions, Officer Rivera notified two Florida City police officers of the activity. With Anderson sitting nearby, the officers approached the scene and retrieved the

3

baggie from the pole. Subsequent laboratory tests revealed that the baggie

contained several smaller baggies holding a total of 8 grams of cocaine base and

3.8 grams of powder cocaine.

In addition to the accounts of Officer Rivera, the two officers who seized the

narcotics, and a forensic chemist from the Drug Enforcement Agency, the

government offered into evidence the videotape of the transactions and proof of

Anderson's past convictions for various crimes, including possession and sale of

cocaine. The jury convicted Anderson on the same day that it heard all of the

evidence.

Based on the quantity of narcotics possessed by Anderson, the Probation

Office set Anderson's base offense level under the United States Sentencing

Guidelines at 26, pursuant to U.S.S.G. § 2D1.1(c)(7).[2] Because Anderson was a

"career offender" under U.S.S.G. § 4B1.1, however, he was assigned an adjusted

offense level of 37 and a criminal history category of VI, giving him a guidelines

imprisonment range of 360 months to life.[3] Anderson objected that Apprendi,

---

[2]Pursuant to Application Note 10 of U.S.S.G. § 2D1.1, the PSI converted the amounts of both the cocaine base and the powder cocaine to their equivalent amounts of marijuana. The eight grams of cocaine base equaled 160 kilograms of marijuana, and the 3.8 grams of powder cocaine equaled 760 grams of marijuana. This totaled 160.76 kilograms of marijuana, which yielded an offense level of 26 under U.S.S.G. § 2D1.1(c)(7).

[3]Because the offense involved more than five grams of cocaine base and because Anderson had a prior felony drug conviction, he was eligible for a life sentence under 21 U.S.C. § 841(b)(1)(B). Furthermore, Anderson was a career offender under U.S.S.G. § 4B1.1 because

which was decided six days after the trial, prevented the district court from sentencing him above the twenty-year statutory maximum imposed by 21 U.S.C. § 841(b)(1)(C) because the indictment did not charge, and the jury did not find, a specific amount of narcotics. Agreeing with the government, the district court rejected Anderson's Apprendi argument, holding that, in light of the evidence presented, "there was only one conclusion that the jury could have reached" -- namely, that the offense involved 8 grams of cocaine base and 3.8 grams of powder cocaine. After overruling Anderson's objections, the district court sentenced him to life imprisonment, followed by an eight-year term of supervised release.

II.

We review de novo a defendant's claim that the evidence was insufficient to convict him, viewing the evidence and all reasonable inferences and credibility choices in the light most favorable to the government. See United States v. De La Mata, 266 F.3d 1275, 1301 (11th Cir. 2001). We will reverse a conviction only if we determine that "a reasonable fact-finder could not find proof of guilt beyond a reasonable doubt." Id. We also review de novo the legal question of whether an

---

he was at least eighteen years old at the time of the instant offense, the instant offense involved a controlled substance, and he had at least two prior felony convictions for controlled substance offenses. The statutory maximum of life and career offender status took Anderson to offense level 37 and criminal history category VI, which carried a sentencing range of 360 months to life.

5

indictment or sentence was insufficient under Apprendi, and we will reverse only if the Apprendi error was harmful. See United States v. Sanchez, 269 F.3d 1250, 1272 (11th Cir. 2001) (en banc).

A.

The evidence presented at trial, viewed in the light most favorable to the government, clearly supports the conviction, as there exists ample proof on which the jury could find Anderson guilty beyond a reasonable doubt. In order to convict a defendant for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), a jury must find first that the defendant possessed the controlled substance knowingly and wilfully, and second that he possessed the substance with the intent to distribute it. See, e.g., United States v. Carter, 60 F.3d 1532, 1535 (11th Cir. 1995). As the videotape and testimony reveal, Officer Rivera saw Anderson engage in what appeared to be two hand-to-hand drug sales. Anderson twice retrieved the baggie from inside a utility pole, engaged in transactions with two individuals known to be involved in crack cocaine deals on two separate occasions, rolled up the baggie, and returned it to the pipe. Money clearly changed hands in the first transaction and appeared to do so in the second transaction as well. The baggie was later seized by the police and found to contain

both cocaine base and powder, and, notably, nobody other than Anderson was seen putting anything into or retrieving anything from the pipe.

In support of the claim that the verdict resulted from nothing more than "mere speculation," United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001), Anderson attempts to identify various flaws in the government's case. For example, he points to Officer Rivera's acknowledgment that he could not clearly see the drugs and cash change hands, and he also notes the alleged lack of clarity in parts of the videotape, the fact that Jones was a known crack dealer, and the fact that Anderson was not arrested until more than a year after this incident occurred. None of these arguments undermine the jury's verdict. Despite the limitations on what Officer Rivera saw, the exchanges are plainly apparent on the videotape, and, especially when viewed in the light most favorable to the government, it is apparent that money and drugs were involved. Combined with Anderson's trips to the pole to obtain and secure the baggie, these exchanges provided a powerful basis for the jury to conclude that Anderson was engaged in the distribution of cocaine.

Furthermore, the mere possibility that Jones might have been selling drugs to Anderson does not diminish our confidence in the verdict. As we have explained, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except

that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Calderon, 127 F.3d 1314, 1324 (11th Cir. 1997). After all, "[a] jury is free to choose among the constructions of the evidence," id., and there is nothing unreasonable about the jury's choice in this case.[4] On this record, we conclude that Anderson's sufficiency of the evidence claim must fail.

B.

The Supreme Court established in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63. This Circuit applies Apprendi to Sections 841(b)(1)(A) and (B) of Title 21 of the United States Code, which mandate that sentences be determined on the basis of drug quantity. See, e.g., United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2001). Therefore, as a general rule, a drug quantity determination that takes a sentence beyond the statutory maximum must be found by a jury beyond a reasonable doubt.

---

[4]It should also be noted that even if Anderson had been buying narcotics from Jones, he would still be guilty of possession with intent to distribute as long as he intended to sell the drugs that he purchased from Jones. The circumstances of the case, including the storage of the narcotics in baggies in a pole, adequately supports the conclusion that drugs were intended for more than personal use.

We have held, however, that an <u>Apprendi</u> error does not require reversal of the sentence if that error is harmless. <u>See</u> <u>Sanchez</u>, 269 F.3d at 1272-75. Quite simply, <u>Apprendi</u> errors are neither jurisdictional nor structural, <u>see id.</u>, and "do not fall within the limited class of 'fundamental constitutional errors that defy analysis by harmless error standards.'" <u>United States v. Candelario</u>, 240 F.3d 1300, 1307 (11th Cir. 2001) (quoting <u>Neder v. United States</u>, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833, 144 L. Ed. 2d 35 (1999)) (internal quotations omitted). In fact, "[h]armless error review is 'appropriate' in the <u>Apprendi</u> context 'because it blocks setting aside sentences for small errors or defects that have little, if any, likelihood of having changed the result at trial.'" <u>Sanchez</u>, 269 F.2d at 1273 (quoting <u>Nealy</u>, 232 F.3d at 829-30) (internal punctuation and quotations omitted). Because <u>Apprendi</u> errors are subject to harmless error review, they can provide no relief to the sentenced defendant if they are "harmless beyond a reasonable doubt." <u>Candelario</u>, 240 F.3d at 1307 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967)).

In the context of drug quantity, "[w]e must affirm [the] sentence if the record does not contain evidence that could rationally lead to a contrary finding with respect to drug quantity." <u>Nealy</u>, 232 F.3d at 830. In <u>Nealy</u>, for example, we held that the failure to submit drug quantity to the jury was harmless because the

9

quantity was uncontested by the defense and therefore "no reasonable jury could have rationally concluded that Defendant was guilty of the substantive offense -- possession, with intent to distribute of the cocaine base in his backpack -- but that the amount of cocaine possessed was less than 5 grams." Id. Similarly, in Candelario, we held that the defendant's substantial rights were not harmed by an Apprendi error because, in reaching a guilty verdict, the jury necessarily believed the testimony of the defendant's partner, who testified about not only the defendant's activity, but also the amount of drugs distributed. "Based on this testimony, no reasonable jury could have concluded that Candelario was guilty of the substantive offense (possession with intent to distribute cocaine base), but that the amount was less than five grams." Candelario, 240 F.3d at 1312; see also United States v. Swatzie, 228 F.3d 1278, 1283 (11th Cir. 2000) (finding no violation of substantial rights because "no evidentiary basis existed for the jury reasonably to have found that Swatzie possessed drugs with intent to distribute, but did not possess both cocaine base and powder at least in the amounts the authorities bagged at Swatzie's house").

Our en banc decision in Sanchez clearly endorsed the use of harmless error analysis in this context. See Sanchez, 269 F.3d 1250, 1271-72 n.40 (explicitly reaffirming holdings of, inter alia, Nealy, Candelario, and Swatzie). Simply put,

10

the failure to charge or submit to the jury a specific drug quantity is harmless error under Apprendi if, by finding the defendant guilty, the jury necessarily must have found, beyond a reasonable doubt, that a certain quantity of drugs was involved in the offense. Put differently, if no reasonable juror could have found the defendant guilty without also finding that the specific quantity of drugs was involved, then the defendant is not entitled to a resentencing.

In this case, no reasonable juror could have found Anderson guilty without also finding that he possessed at least five grams of cocaine base, which alone was enough to make him eligible for life imprisonment under 21 U.S.C. § 841(b)(1)(B). On the videotape, Anderson can be observed conducting sales of cocaine from a baggie stashed in the utility pole. That baggie, which was later seized by police, contained several smaller baggies containing more than 8 grams of crack as well as 3.8 grams of powder cocaine. Nobody else was seen putting anything into the pole or taking anything out of it. Anderson was the only person to handle the cocaine baggie, and he quite plainly appears to have had complete control over it at all times during the relevant period. If they believed that Anderson possessed the stash of crack and powder with the intent to distribute it, the jurors could not have believed that he possessed less than the amount that was found in the baggie in the pole.

There is no logical, legal, or evidentiary support for the various hypotheses that Anderson offers in an attempt to explain that he did not possess or intend to distribute all of the drugs in the baggie. For example, he suggests that he might have intended to use all or some of the drugs that remained in the baggie for himself, that the drugs might have belonged to somebody else, and that the exchange with Glover may have involved a transaction for sexual favors, not narcotics. Any argument that the drugs were intended for personal consumption is belied by the fact that the narcotics were packaged in individual baggies and secured in a utility pole, as opposed to a more secure private setting, and the fact that Anderson was observed on two occasions making exchanges with a known crack user and a known crack dealer after withdrawing the baggie from the utility pole. See United States v. Harris, 20 F.3d 445, 453 (11th Cir. 1994) (holding that government may prove intent to distribute through circumstantial evidence). Furthermore, any claim that the drugs belonged to someone else is undermined by the fact that only Anderson handled the stash. Moreover, it is inconceivable that another drug dealer would have left his stash of cocaine in a utility pole where others could have accessed it easily.

In any event, even if we were to accept the hypothesis that the cocaine technically belonged to someone else, Anderson clearly had constructive

possession and intended to distribute the drugs. See United States v. Cooper, 203 F.3d 1279, 1286 (11th Cir. 2000) ("Convictions for the possession of narcotics can be premised on either actual or constructive possession, and to prove constructive possession, the Government needed only to demonstrate that [defendant] 'knew the identity of the substance[s] and exercised dominion or control over [them].'") (quoting United States v. Richardson, 764 F.2d 1514, 1525 (11th Cir. 1985)) (internal citations omitted) (emphasis in original). Finally, Anderson's claim that the transaction with Glover involved sexual relations is wholly unsupported by any evidence in this record and is also irrelevant, since it is clear from the videotape that drugs and money were exchanged.

In the end, there can be no doubt that the jury's verdict of guilt included a determination that Anderson possessed with intent to distribute more than five grams of crack cocaine. By finding Anderson guilty on the evidence presented, the jury necessarily found that he possessed the baggie in the pole and intended to distribute the narcotics that it contained. As lab tests revealed, the bag contained 8 grams of crack cocaine and 3.8 grams of powder cocaine. Any error in failing to submit the drug quantity question to the jury was therefore harmless.[5]

---

[5]Anderson also argues that harmless error analysis should not apply because, unlike in the other cases in which such analysis has been employed, the district court in this case knew about Apprendi and nevertheless decided not to submit the quantity question to the jury. We are unpersuaded. First, although it was decided before sentencing, Apprendi had not been decided at

13

III.

Because Anderson's conviction was supported by the evidence and because any sentencing error under <u>Apprendi</u> was clearly harmless, we reject Anderson's arguments on appeal and AFFIRM his conviction and sentence.

**AFFIRMED.**

---

the time of Anderson's trial, and therefore the district court judge could not have known about the need to submit the quantity issue to the jury. Second, the district court's awareness of <u>Apprendi</u> at the time of sentencing does not affect the harmlessness of the <u>Apprendi</u> error in any event. If an error caused no harm to the defendant, it is harmless regardless of the thought process of the district court.

Finally, at oral argument, Anderson offered for the first time as a separate basis for remand the claim that the 21 U.S.C. § 851 enhancement was procedurally improper because the government failed to provide proper proof of his prior convictions. This argument was not raised in the district court or in Anderson's appellate brief, and it therefore cannot be considered by this Court. <u>See, e.g.</u>, <u>Roberts v. Comm'r of Internal Revenue</u>, 175 F.3d 889, 897 n.11 (11th Cir. 1999) (explaining that, aside from jurisdictional issues, this Court does not address issues raised for the first time at oral argument).