[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-10684
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 08-00064-CR-2-LSC-RRA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY TERRILL CARPENTER,
BORIS VERNARD AGEE,
a.k.a. Mac-Bo,
JARED KENYATTA CALHOUN,
SOLOMON GRADY JOHNSON,
a.k.a. Big Sol,
a.k.a. Mimi,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(February 10, 2012)

Before CARNES and HULL, Circuit Judges, and ROTHSTEIN,* District Judge.

PER CURIAM:

After review and oral argument, we AFFIRM the convictions of each appellant. We also AFFIRM the sentences of Boris Vernard Agee ("Agee") and Timothy Terrill Carpenter ("Carpenter"), but VACATE the sentence of Jared Kenyatta Calhoun ("Calhoun") and REMAND for resentencing in a manner consistent with this opinion.

This appeal stems from a multi-defendant criminal case involving drug trafficking and counterfeiting offenses. Specifically, in April 2008, a federal grand jury issued a 55-count superceding indictment against 10 defendants involving crimes committed in Birmingham, Alabama. Five defendants, including the four on appeal here, were tried together. An additional defendant, Courtney Campbell, pled guilty and testified on behalf of the government. After the first trial ended in a mistrial, a jury convicted the four defendants and acquitted the fifth defendant. This appeal followed.

Appellants raise numerous arguments on appeal. The court will address each appellant's arguments.

---

* Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

## I. Johnson

At the second trial, Solomon Grady Johnson ("Johnson") was convicted of multiple drug trafficking counts, including conspiracy to distribute powder and crack cocaine (Count 1), 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, possession with intent to distribute powder cocaine (Count 5), 21 U.S.C. § 841(a)(1), (b)(1)(C), distribution of crack cocaine (Counts 7 & 9), 21 U.S.C. § 841(a)(1), (b)(1)(C), and unlawful use of a telephone (Counts 38, 39, 44-46 & 51), 21 U.S.C. § 843(b). He was sentenced to 360 months in prison on counts 1, 7 and 9. He received lesser concurrent sentences on the remaining counts. On appeal, Johnson argues that the trial court erred in overruling his motion to dismiss based on double jeopardy grounds.

The facts relevant to this issue are few. After the jury was empaneled and sworn for the first trial, the trial court realized that the trial was going to take longer than had been originally anticipated. Because of personal commitments, the court informed the parties and jury that there would be a two-week continuance in the middle of trial. Several jurors claimed that they would face a hardship from the continuance, leaving only 11 jurors to hear the case. After considering their options, defendants asked the court to declare a mistrial. The court did so, and the matter was then reassigned to a new trial judge and a second

trial was held. On these facts, Johnson argues that he was subjected to unconstitutional multiple prosecutions.

Ordinarily, challenges related to double jeopardy are reviewed *de novo*. *United States v. Baggett*, 901 F.2d 1546, 1548 (11th Cir. 1990). "We are precluded, however, from reviewing an issue raised on appeal if it has been *waived* through the doctrine of invited error." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009); *see also United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003) (noting that no manifestation of review is available "where a criminal defendant 'invites' the constitutional error of which he complains").

Although Johnson recognizes that invited error generally precludes appellate review, he contends that the trial court's handling of the first trial's schedule "provoke[d]" a mistrial request. *See Lee v. United States*, 432 U.S. 23, 34 (1977). Such an argument only has value where a defendant can show that the trial court was "motivated by bad faith" or acted "to harass or prejudice" the defendant. *Id.* at 33. Neither is evident here. Accordingly, Johnson's double jeopardy argument has been waived and his conviction is affirmed.

## II. Agee

Agee was convicted of several offenses, including conspiracy to utter counterfeited securities (Count 12), 18 U.S.C. § 371. For his role, he was

4

sentenced to 22 months in prison followed by three years of supervised release. On appeal, Agee argues that the sentencing judge erred in imposing a sentence that was substantially longer than those of co-defendants who pled guilty and who were involved in similar charged conduct.[1]

We review the reasonableness of a sentence under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). Specifically, "[w]e must evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in [18 U.S.C. §] 3553(a)" while recognizing that "there is a range of reasonable sentences from which the district court may choose." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). The party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in light of [the] record and the factors in section 3553(a)." *Id.* Although a sentence within the advisory guidelines range is not *per se* reasonable, we would ordinarily expect such a sentence to be reasonable. *Id*.

The purposes of sentencing referenced in § 3553(a) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to

---

[1] During the pendency of the appeal, Agee was released from prison and both sides requested dismissal on the grounds of mootness. However, in denying Agee's unopposed motion to dismiss his appeal, we rejected the mootness contention and noted that the pendency of Agee's supervised release left a ripe controversy for the court's review. *See Dawson v. Scott*, 50 F.3d 884, 886 n.2 (11th Cir. 1995).

provide just punishment, to deter criminal conduct, and to protect the public from recidivism. 18 U.S.C. § 3553(a)(2). The sentencing court must also consider the nature of the circumstances of the offense and the history of the defendant, the kinds of sentences available, the applicable guidelines range, pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparity, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7). The weight accorded to these factors is a matter within the sentencing court's discretion. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).

Agee contends that his sentence is substantially higher than that of similar co-defendants such that it is unreasonable. Upon review of the record, we find no error. Specifically, we note that the sentencing court found that Agee was more culpable than the co-defendants who received lower sentences. Moreover, by sentencing Agee within the applicable guidelines range, the sentencing court ensured that there was no unwarranted disparity between Agee's sentence and those normally imposed on similarly situated defendants. *See United States v. Regueiro*, 240 F.3d 1321, 1325-26 (11th Cir. 2001) (noting that sentence disparity between co-defendants is seldom a basis for relief particularly where the sentence is in line with those who committed similar offenses in other cases). Accordingly,

Agee's sentence is affirmed.

### III. Carpenter

Carpenter was convicted of multiple drug trafficking counts, including conspiracy to distribute powder and crack cocaine (Count 1), 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and distribution of powder and crack cocaine (Count 3), 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C). Given Carpenter's three prior felony drug convictions, he was sentenced to two concurrent terms of life in prison. On appeal, Carpenter raises three alleged errors. First, he contends that he was prejudiced by the admission of undisclosed prior bad acts evidence. Second, he contends that there was insufficient evidence to convict him of participating in the drug conspiracy. Third, he contends that his life sentence violates the Eighth Amendment.

#### A.    Admission of Undisclosed Prior Bad Acts Evidence

Carpenter contends that he was prejudiced by the admission of prior bad acts evidence that was not disclosed by the government prior to trial as required by Fed. R. Evid. 404(b). "We review the district court's evidentiary rulings for clear abuse of discretion." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).

At the second trial, the government offered evidence regarding several 2007

controlled drug transactions between a confidential informant and Carpenter. In relation to these transactions, the informant testified that he began buying cocaine from Carpenter in 1995. The temporal scope of the informant's testimony was not revealed to Carpenter in advance. Defense counsel immediately objected to its introduction. Although the trial court acknowledged during a sidebar conference that the government would have been better served by providing notice that the informant intended to testify that Carpenter sold him drugs as far back as 1995, the court concluded that the testimony was admissible to provide appropriate context for the informant's 2007 controlled buy from Carpenter.

Carpenter argues that the testimony was Rule 404(b) evidence and should have been disclosed. Furthermore, he contends that he was substantially prejudiced by its improper admission. By contrast, the government argues that the testimony was not Rule 404(b) evidence because the informant's drug-dealing relationship with Carpenter, although occurring before the charged conspiracy,[2] was interrelated with the conspiracy.

Upon review of the record, we find that the trial court did not abuse its discretion by admitting the testimony of the informant related to Carpenter's 1995 drug history. Prior rulings of this court have explained that "[e]vidence of

_____

[2] The charged conspiracy began in 2000.

criminal activity other than the offense charged is not extrinsic under Rule 404(b) if it is . . . necessary to complete the story of the crime, or . . . inextricably intertwined with the evidence regarding the charged offense." *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993). The informant's testimony here meets both thresholds. First, the testimony helped to complete the story about how the informant was able to execute controlled drug transactions with Carpenter in 2007 without him becoming suspicious about the circumstances. Second, the 1995 testimony was "inextricably intertwined" with testimony regarding the 2007 controlled drug transaction. Accordingly, the trial court properly admitted the testimony at trial over Carpenter's objection.

## B.   Sufficiency of Evidence Related to the Drug Conspiracy

Carpenter asserts that there was insufficient evidence to convict him of participating in the drug conspiracy. "We review *de novo* a defendant's claim that the evidence was insufficient to convict him, viewing the evidence and all reasonable inferences and credibility choices in the light most favorable to the government." *United States v. Anderson*, 289 F.3d 1321, 1325 (11th Cir. 2002).

The charged drug conspiracy related, in part, to several individuals' involvement in a motorcycle group formed in 2000 by Campbell and Johnson named the Southern Boyz Motorcycle Club (hereinafter "Southern Boyz"). There

was evidence presented at trial that Southern Boyz operated as a front to distribute powder and crack cocaine in Birmingham, Alabama. There was also evidence that Carpenter was a member of Southern Boyz and that he and Campbell received cocaine from the same supplier, Nicholas Harmon, who was a cooperating witness for the government. The cocaine supplied by Harmon to Campbell and Carpenter was known as the "brown" cocaine because of its unique color. Campbell and Carpenter then resold the brown cocaine.

On appeal, Carpenter argues that the only evidence linking him to the drug conspiracy was his involvement in Southern Boyz and that there was no evidence that he had an agreement with Campbell or any other defendant to participate in a drug conspiracy. The government counters that evidence linking Carpenter and Campbell to Harmon and the sale and resale of the brown cocaine, in addition to evidence of Carpenter's involvement in Southern Boyz, was sufficient for a jury to find Carpenter guilty of participating in the drug conspiracy.

To sustain a conviction for conspiracy to distribute cocaine, the government must prove that "1) an agreement existed between two or more persons to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Matthews*, 168 F.3d 1234, 1245 (11th Cir. 1999). As a preliminary

matter, proof of a formal agreement between Carpenter and Campbell (or anyone in Southern Boyz) to distribute drugs is unnecessary. It is well settled that circumstantial evidence can suffice to prove the existence of an agreement. *See, e.g.*, *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). Here, both Campbell and Carpenter were members of Southern Boyz. Southern Boyz was a known front for drug trafficking. Both Campbell and Carpenter received drugs from Harmon and resold those drugs to buyers in Birmingham. Given the overlap in the men's illicit activities, it was reasonable for the jury to infer that an agreement to distribute drugs existed.

As to the remaining factors, viewing the evidence in the light most favorable to the government, there is sufficient evidence for a jury to find Carpenter guilty of participating in the drug conspiracy. It was reasonable for the jury to infer that the men knew of each other's drug dealings and, in fact, that they knowingly participated in those activities together through their affiliation with Southern Boyz. Regardless that their activities could also be viewed as in competition with each other for the sale of the brown cocaine, the evidence shows that "their combined efforts produced a haven for the illegal distribution of drugs" in Birmingham. *See United States v. Westry*, 524 F.3d 1198, 1213 (11th Cir. 2008). Where the record arguably shows "that the principals, including

11

Appellants, shared . . . sources, distributors, and customers, the fact that [they] 'may sometimes, or even always, compete for supplies or customers in serving that market does not on that account alone disprove . . . the existence of a single conspiracy to achieve the overall results of their several efforts.'" *Id.* (quoting *United States v. Johnson*, 54 F.3d 1150, 1154-55 (4th Cir. 1995) (citation omitted)). In fact, it can be concluded that through Campbell's and Carpenter's efforts, drug trafficking activity grew, whether through their competition or through their joint efforts. *See id.* As in *Westry*, "[w]hen measured against the governing standards, we are persuaded that sufficient evidence was presented to sustain the conspiracy conviction[]." *Id.*[3] Accordingly, Carpenter's drug conspiracy conviction is affirmed.

## C.    Eighth Amendment Sentencing Issue

Carpenter asserts that his concurrent life sentences are disproportionate to his present and prior convictions. We review properly preserved constitutional challenges, like the one here, *de novo*. *See United States v. Lyons*, 403 F.3d 1248, 1250 (11th Cir. 2005). In so doing, we are bound by prior panel decisions that have not been overruled by the court sitting *en banc* or by the Supreme Court.

---

[3] As will be discussed in relation to Calhoun, Campbell was at the center of several drug conspiracies. Regardless of the scope of Campbell's drug-dealing activities, the evidence against Carpenter is sufficient to find him guilty of the charged conspiracy.

*United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008).

Here, because Carpenter had three prior felony drug convictions, his drug-related offenses in this case triggered the mandatory life sentence requirement of 21 U.S.C. § 841(b)(1)(A). We have already rejected an Eighth Amendment challenge related to the mandatory life sentence requirement of § 841(b)(1)(A). *See United States v. Willis*, 956 F.2d 248, 250-51 (11th Cir. 1992) (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)). Carpenter's Eighth Amendment challenge is foreclosed by our decision in *Willis*. Like the defendant in that case, Carpenter had a history of recidivism with respect to drug offenses, and was recently convicted of a serious offense involving substantial quantities of drugs. Accordingly, Carpenter's sentence is affirmed.

## IV.  Calhoun

Calhoun was convicted of conspiracy to distribute powder cocaine (Count 1), 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, conspiracy to utter counterfeit securities, (Count 12), 18 U.S.C. § 371, and unlawful use of a telephone (Counts 48, 50 & 55), 21 U.S.C. § 843(b). Calhoun was acquitted of the portion of Count 1 related to the distribution of crack cocaine. He was sentenced to 160 months in prison on the drug conspiracy conviction and to lesser concurrent terms on the remaining convictions. On appeal, Calhoun raises five alleged errors. First, he

13

contends that there was insufficient evidence to convict him of participating in the counterfeiting conspiracy. Second, he contends that there was a material variance between the charged conspiracy and the conspiracy he allegedly participated in. Third, and relatedly, he contends that there was insufficient evidence to convict him of participating in the drug conspiracy relevant to him. Fourth, he contends that the sentencing court failed to make the appropriate individualized findings at the sentencing hearing. Lastly, he contends that his sentence is substantively unreasonable in violation of the Sixth Amendment.

Prior to resolution of these issues, additional background regarding the charged conspiracy and Calhoun's activities is necessary. The indictment specifically alleged that from on or about January 2000 to January 2008, Calhoun conspired with seven other individuals (including Campbell and Carpenter) to possess with the intent to distribute five kilograms or more of powder cocaine and 50 grams or more of crack cocaine in Birmingham, Alabama. For his part, Calhoun was convicted of conspiring to distribute less than 500 grams of powder cocaine. Calhoun was also convicted of participating in the counterfeiting conspiracy.

The facts giving rise to Calhoun's conspiracy convictions are that Campbell sold cocaine to Calhoun. Calhoun was a cocaine user, but also resold some of the

14

cocaine to others in Birmingham. More specifically, the evidence presented at trial was that from 2004 to 2008 Calhoun made between eight and ten purchases from Campbell of up to 1/4 kilogram of cocaine at a time. Campbell testified that he believed that Calhoun resold the cocaine to others about "[n]inety percent of the time." In a recorded telephone call between Calhoun and Campbell, Calhoun can be heard to offer to "split the profit" with Campbell. Additionally, Calhoun complained to Campbell that a delayed drug sale between the two men prevented Calhoun from obtaining any drugs for his customers. In another recorded telephone conversation, Calhoun and Campbell discussed the exchange of counterfeit money, including that Calhoun would pay Campbell $12,000 of legitimate money in exchange for $40,000 of counterfeit funds.

## A. Sufficiency of Evidence Related to the Counterfeiting Conspiracy

Here, Calhoun argues that the government's evidence against him consisted of a single telephone call with Campbell. In that call, Calhoun inquires about obtaining counterfeit funds from Campbell and appears to set a date for the exchange. While Calhoun acknowledges that the conversation occurred, he contends that it does not evidence that he actually purchased counterfeit funds from Campbell or that he participated in an alleged conspiracy to exchange the counterfeit funds in the marketplace.

15

As noted above, "[w]e review *de novo* a defendant's claim that the evidence was insufficient to convict him, viewing the evidence and all reasonable inferences and credibility choices in the light most favorable to the government." *Anderson*, 289 F.3d at 1325.

There are three essential elements required to be shown in support of a counterfeiting conspiracy: an agreement; knowing participation; and an overt act. *United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195, 1203 (11th Cir. 2009). Here, when viewed in the light most favorable to the government, the evidence related to Calhoun's participation in the counterfeiting conspiracy was sufficient. The telephone call between Campbell and Calhoun clearly shows an agreement between them to exchange counterfeit money. The call also shows that Calhoun knowingly and voluntarily participated in the conspiracy and the commission of an overt act, namely the discussion about the exchange of money and the setting of a time and date for it. It is immaterial whether proof exists to show that the deal was consummated. *See United States v. Elledge*, 723 F.2d 864, 869 (11th Cir. 1984) ("That the plan was not ultimately completed or executed does not negate the crime of conspiracy."). Accordingly, Calhoun's counterfeiting conspiracy conviction is affirmed.

B.      **Drug Conspiracy and Sentencing Issues**

16

Calhoun argues that there was a material variance between the charged drug conspiracy and the evidence presented at trial. Specifically, Calhoun argues that what the government attempted to prove at trial was the existence of "two separate and distinct drug conspiracies": (1) the massive Southern Boyz conspiracy, which was the charged conspiracy, and (2) the smaller Campbell-Calhoun conspiracy. Calhoun contends that there was no evidence linking him to the Southern Boyz conspiracy or any large-scale drug distribution scheme as charged in the indictment. Calhoun argues that the jury transferred evidence of the larger conspiracy to him, making his conduct appear more significant than it actually was.

In determining whether a conviction must be reversed because of a material variance between the crime charged in the indictment and the evidence presented at trial, we employ a two-step analysis. First, we view the evidence in the light most favorable to the government and consider whether a reasonable jury could have determined beyond a reasonable doubt that a single conspiracy existed. *United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997). "Second, we determine whether any substantial prejudice resulted to the defendant[] if more than one conspiracy did in fact exist." *United States v. Coy*, 19 F.3d 629, 633 (11th Cir. 1994).

17

The first step of the analysis requires the court to consider the following factors: "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." *United States v. Seher*, 562 F.3d 1344, 1366 (11th Cir. 2009) (internal quotation marks omitted). Here, while there was evidence of a common goal among the defendants, namely the sale and distribution of drugs in Birmingham through the aid of Campbell, the remaining factors fall decidedly in Calhoun's favor. Evidence at trial demonstrated that Southern Boyz pooled assets and resources among Campbell, Johnson, Carpenter, and their fellow members and associates. For example, when Johnson needed assistance with converting powder cocaine to crack cocaine and Campbell was unavailable, another Southern Boyz member helped him. There was also evidence that Campbell would loan or swap drugs and money with other co-conspirators to fill orders.

This overarching scheme stands in stark contrast to the evidence detailing the relationship between Campbell and Calhoun. There is no evidence that Calhoun was a member of or affiliated with Southern Boyz. Moreover, there is also no evidence that members of Southern Boyz, besides Campbell, assisted Calhoun in the sale or distribution of drugs. Indeed, while Campbell and other members of Southern Boyz were under police surveillance over a multi-year

18

period, Calhoun was never identified with anyone other than Campbell. Moreover, it is significant that the jury acquitted Calhoun (but not Johnson or Carpenter) of any allegation that he distributed crack cocaine as part of his conduct.

A review of the evidence reveals that the scheme underlying the Southern Boyz conspiracy involved frequent transactions between a variety of sellers and buyers for large quantities of drugs (i.e., kilograms of powder and crack cocaine) over a long period of time. By contrast, the Campbell-Calhoun conspiracy involved infrequent transactions between two men for smaller quantities of drugs (i.e., grams of powder cocaine only) during a shorter period of time. In summary, there was insufficient evidence linking Calhoun to the scheme underlying the Southern Boyz conspiracy and, other than Campbell, there was no overlap between co-conspirators in the Southern Boyz conspiracy and Calhoun.

Although "[i]t is irrelevant that particular conspirators may not have known other conspirators," the evidence must suggest that the defendant knowingly joined the conspiracy and participated in its underlying scheme. *United States v. Edouard*, 485 F.3d 1324, 1347 (11th Cir. 2007). "It is clearly not sufficient simply to say that the defendants each shared a common goal, to-wit: profit from the sale of cocaine. In order to constitute a single conspiracy there must be a

single enterprise which sets up a common goal connecting each defendant." *United States v. Glinton*, 154 F.3d 1245, 1251 (11th Cir. 1998); *see also Kotteakos v. United States*, 328 U.S. 750, 769 (1946) (concluding that it was error to "confuse[] the common purpose of a single enterprise with the several, though similar, purposes of numerous separate adventures of like character").  Insofar as Calhoun is concerned, we conclude that no reasonable jury could find beyond a reasonable doubt that a single conspiracy existed in this case.  As such, we agree that there was a material variance between the conspiracy charged and the evidence presented at trial.

"The finding that two conspiracies existed does not end the analysis.  We next inquire whether this variance prejudiced the defendant['s] substantial rights."  *Coy*, 19 F.3d at 634.  Prejudice is usually found when "there are so many defendants and so many separate conspiracies before the jury that there is a substantial likelihood that the jury transferred evidence from one conspiracy to a defendant involved in another conspiracy."  *Id.*  In other words, a material variance prejudices a defendant when it creates "a legitimate concern that a defendant who operated on the periphery of a large, overarching conspiracy will be unfairly grouped in with a larger conspiracy than he intended to join."  *United States v. Richardson*, 532 F.3d 1279, 1291 (11th Cir. 2008).

Here, we are convinced that Calhoun was not prejudiced by the material variance. Although there was a large amount of evidence presented at trial that related exclusively to the Southern Boyz conspiracy, neither conspiratorial scheme was particularly complex. In addition, Calhoun was fairly apprised of the evidence against him, namely that he participated in a conspiracy with Campbell to sell and distribute cocaine. Campbell's testimony about his drug distribution relationship with Calhoun and the admission of the recorded telephone conversations regarding their relationship were unimpeached on the record. *See Glinton*, 154 F.3d at 1252 (finding no prejudice from material variance where evidence clearly linked defendants to a specific conspiracy).

Moreover, the jury utilized special verdict forms for each defendant and returned different verdicts on different counts for each defendant, including an acquittal of Calhoun as to distribution of crack cocaine. *See id.* (finding it persuasive that jury acquitted defendant of one conspiracy count, but not the other conspiracy count, despite the material variance). "Such individual treatment of the defendants by the jury demonstrates the absence of confusion and improper transfers of evidence." *Coy*, 19 F.3d at 635. In other words, "[t]hese divergent verdicts indicate the jury . . . had no difficulty compartmentalizing the evidence presented. [When such is the case, w]e conclude there [is] no prejudicial variance

21

. . . ." *Glinton*, 154 F.3d at 1252.

In the alternative, Calhoun argues that there was insufficient evidence to convict him of participating in the Campbell-Calhoun conspiracy because there was no evidence that he had an agreement with Campbell. Specifically, Calhoun cites to the testimony of Campbell wherein he expressly testified that no agreement existed between the two men "to distribute drugs" or "to go out and commit crimes together."

Viewing this challenge *de novo* and in the light most favorable to the government, *see Anderson*, 289 F.3d at 1325, we find that there was sufficient evidence to convict Calhoun of participating in a drug conspiracy with Campbell. The two men conducted between eight and ten drug deals over a four-year period, at times discussing whether to split the profit. Moreover, Calhoun purchased more than just an amount that could be attributed to his personal use and, in fact, Calhoun specifically told Campbell that he was reselling at least a portion of the drugs he purchased from Campbell to third parties. This type of ongoing conduct between buyer and seller provided sufficient circumstantial evidence for a reasonable jury to find Calhoun guilty of participating in a drug conspiracy. *See United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009) (noting that it "is well-established in this Circuit [that] where there are repeated transactions buying

22

and selling large quantities of illegal drugs, that is sufficient evidence that the participants were involved in a conspiracy"); *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999) (upholding conspiracy conviction where "evidence show[ed] a continuing relationship that result[ed] in the repeated transfer of illegal drugs to the purchaser"). Accordingly, Calhoun's drug conspiracy conviction is affirmed.

Despite the validity of the conviction, in light of our holding that the government only proved that Calhoun participated in the smaller Campbell-Calhoun conspiracy, Calhoun's sentence must be vacated and the matter remanded for resentencing consistent with this opinion. *See, e.g.*, *Coy*, 19 F.3d at 637 ("Having found that two separate conspiracies existed, we necessarily conclude that the district court erred in attributing the total amount of [cocaine] involved in both conspiracies to the defendant[].").  This decision obviates the need to resolve Calhoun's final claims related to his sentence.

**AFFIRMED in part, VACATED in part, and REMANDED in part**.