[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15091
Non-Argument Calendar
_____

D.C. Docket No. 1:89-cr-00602-WJZ-11

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES MALONE,

Defendant-Appellant.

_____

No. 12-15092
Non-Argument Calendar
_____

D.C. Docket No. 1:90-cr-00260-WJZ-1

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee,


versus


JAMES MALONE,
a.k.a. Martin James Malone,

                                                    Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 26, 2014)

Before CARNES, Chief Judge, JORDAN and FAY, Circuit Judges.

PER CURIAM:

James Malone, a former fugitive who was extradited back to the United States in 2012, was convicted on one count of conspiring to import five or more kilograms of cocaine and one count of failing to appear for trial. The district court sentenced him to a 240-month mandatory minimum prison term on the drug conspiracy count and a consecutive 22-month term on the failure to appear count. He now challenges his total sentence, raising four arguments on appeal.

2

## I.  Facts

In 1989 a federal grand jury indicted Malone, along with various codefendants, on one count of conspiring to import at least five kilograms of cocaine, in violation of 21 U.S.C. § 963, and one count of importing at least five kilograms of cocaine, in violation of 21 U.S.C. § 952(a).  Malone and several of his codefendants went to trial, which began on January 4, 1990, and lasted for 21 days.  On January 29, 1990, Malone did not show up for trial and a bench warrant was issued for his arrest.  At that point, closing arguments and jury deliberations were the only stages of trial yet to be completed, and the trial continued in Malone's absence.  The jury returned a general verdict two days later, acquitting Malone on the substantive importation count but finding him guilty on the drug conspiracy count.  The court did not have the jury return a special verdict finding how much cocaine was involved in the drug conspiracy.  In any event, because Malone was not in custody, the district court was unable to sentence him on the drug conspiracy conviction at that time.

Malone was declared a fugitive from justice, and he was charged with failing to appear for trial, in violation of 18 U.S.C. § 3146(a).  Twenty-two years later, in February 2012, he was arrested in Ecuador and extradited back to the United States.  A federal public defender was appointed to represent Malone, and in April

3

2012 he pleaded guilty to the failure to appear charge.[1]

Over the course of two sentence hearings, the district court determined Malone's advisory sentence under the United States Sentencing Guidelines. He was assigned a base offense level of 30 under U.S.S.G. § 2D1.1(a)(5) based on his 1990 conviction for conspiring to import cocaine. Because he fled during his trial, Malone received a 2-level enhancement under § 3C1.1 for obstruction of justice. Finally, he received a 4-level reduction under § 3B1.2(a) because he had been a minimal participant in the drug conspiracy. With an adjusted offense level of 28 and a criminal history category of II, Malone's initial guidelines range was 87–108 months imprisonment.

However, a dispute arose at the first sentence hearing about whether Malone's actual advisory sentence should be 240 months imprisonment under U.S.S.G. § 5G1.1(b). Under that guidelines provision, when a defendant is subject to a statutory minimum sentence that is higher than his guidelines range, the statutory minimum becomes the defendant's advisory sentence. And under 21 U.S.C. § 960(b)(1)(B), any person with a prior felony drug conviction who is later convicted of conspiring to import five or more kilograms of cocaine is subject to a

---

[1] Following his disappearance, Malone had also been charged with failing to comply with the conditions of his bond, in violation of 18 U.S.C. § 401(3), but that charge was dismissed pursuant to the plea agreement.

240-month mandatory minimum sentence. Because Malone had been convicted of a felony drug offense before his 1990 conviction, he would be subject to this statutory minimum sentence if the conspiracy for which he was convicted in 1990 involved five or more kilograms of cocaine.

Malone contended that it would be unconstitutional to apply the statutory minimum because without a finding of drug quantity he would not be subject to a mandatory minimum sentence, see 21 U.S.C. § 960(b), and the jury in his 1990 trial had not made any finding about the amount of cocaine involved in the conspiracy for which he had been convicted. The government responded that the district court could determine whether the statutory minimum applied by relying on the evidence about drug quantity that was presented at trial. The district court recessed the hearing to allow the government to check the transcripts of the 1990 trial.

At the second sentence hearing, the government presented portions of the trial transcript to show the quantity of drugs that were attributable to Malone. Among other things, the government presented two stipulations that had been signed by Malone and his codefendants and then entered into evidence at their trial. The first stipulation provided that 537.5 kilograms of cocaine were seized from the J.J. Lorick, a boat that several of the conspirators had commissioned to

5

bring cocaine from the Bahamas to Miami.  The second stipulation provided that 39.75 kilograms of cocaine had been seized from a golf bag that Malone had indisputably transported in his car from the marina in Miami where the J.J. Lorick had offloaded its illicit cargo.  Based on those two stipulations and other evidence, the district court at the second sentence hearing found "by a preponderance of the evidence that . . . 40 kilograms of cocaine [were] attributed [to] Mr. Malone, but at the very least five kilograms."  As a result, the court concluded that the statutory minimum sentence was triggered, and it sentenced Malone to 240 months imprisonment on the drug charge.  It also imposed a 22-month, consecutive sentence on the failure to appear charge.  See 18 U.S.C. § 3146(b) (providing that any term of imprisonment imposed on a failure to appear conviction must be served "consecutive to the sentence of imprisonment for any other offense").

## II.  Discussion

Malone challenges his sentence on four grounds.  First, he contends that the district court violated his right to a jury under the Sixth Amendment, as interpreted in Alleyne v. United States, — U.S. —, 133 S.Ct. 2151 (2013), by sentencing him to a mandatory minimum sentence under U.S.S.G. § 5G1.1(b) without a jury having found beyond a reasonable doubt that his offense involved at least five kilograms of cocaine.  Second, he contends that we should vacate his sentences

6

because the attorney appointed to represent him during the 2012 proceedings had an alleged conflict of interest. Third, he contends that the district court misapplied the sentencing guidelines when it imposed a separate, consecutive sentence for his failure to appear conviction. Fourth, he contends that the appellate record is incomplete and we should therefore remand the case to the district court so it can reconstruct the record of what occurred during the final two days of his 1990 trial, which he missed when he jumped bond.

## A.  The Alleyne Error

In Alleyne the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime must be submitted to a jury and be found beyond a reasonable doubt. 133 S.Ct. at 2163. That decision was an extension of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63 (2000), in which the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" other than the fact of a prior conviction, must be found beyond a reasonable doubt by the jury. See Alleyne, 133 S.Ct. at 2160. Malone contends, and the government concedes, that the district court violated Alleyne when it sentenced him to a 240-month mandatory minimum sentence on his 1990 drug conviction without a jury finding that the offense involved at least five kilograms of cocaine. Although both parties agree

7

that an <u>Alleyne</u> error occurred, they disagree about whether that error requires vacating Malone's sentence.  The point of disagreement is whether the sentence may be affirmed under the harmless error rule notwithstanding the <u>Alleyne</u> error.

We have not yet decided in a published opinion whether <u>Alleyne</u> errors are subject to harmless error review.[2]  Our precedent applying the harmless error rule to <u>Apprendi</u> errors is instructive because "<u>Alleyne</u> was an extension of <u>Apprendi</u>." <u>United States v. McKinley</u>, 732 F.3d 1291, 1295 (11th Cir. 2013).  We have consistently applied harmless error analysis to <u>Apprendi</u> errors, <u>e.g.</u>, <u>United States v. Anderson</u>, 289 F.3d 1321, 1326 (11th Cir. 2002); <u>United States v. Allen</u>, 302 F.3d 1260, 1276 (11th Cir. 2002), because such errors are not "structural error[s] that would require per se reversal," <u>United States v. Nealy</u>, 232 F.3d 825, 829 & n.4 (11th Cir. 2000).  <u>Nealy</u> illustrates that proposition.  In that case, we held that the district court's "failure to submit the issue of drug quantity to the jury" was a harmless error that did not require reversal, even though the court's drug quantity finding increased the defendant's statutory maximum sentence.  <u>Id.</u> at 829.

We have also applied the harmless error rule when reviewing errors arising from decisions that extended the <u>Apprendi</u> rule.  The <u>Blakely/Booker</u> decision was

---

[2] Several of our sister circuits have already addressed this question, and they have held that <u>Alleyne</u> errors are subject to harmless error review.  <u>See United States v. Davis</u>, 736 F.3d 783, 785 (8th Cir. 2013); <u>United States v. Harakaly</u>, 734 F.3d 88, 94 (1st Cir. 2013); <u>United States v. Mack</u>, 729 F.3d 594, 609 (6th Cir. 2013).

an extension of Apprendi, and we have held that the harmless error rule applies to Blakely/Booker errors.  See United States v. Dulcio, 441 F.3d 1269, 1277 (11th Cir. 2006); United States v. Paz, 405 F.3d 946, 947–48 (11th Cir. 2005).  Because Alleyne, like Blakely/Booker, is another extension of the Apprendi decision, it would be illogical not to apply the harmless error rule consistently to all three types of Apprendi error.

We know that the Alleyne error in this particular case was harmless beyond a reasonable doubt because Malone stipulated to the drug quantity at his trial.  See United States v. Camacho, 248 F.3d 1286, 1290 (11th Cir. 2001) ("The stipulation took the issue away from the jury, and the jury's guilty verdict on the substantive offense rested upon the quantity to which [the defendant] stipulated.  The stipulation thus acts as the equivalent of a jury finding on drug quantity."), overruled on other grounds by United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001); United States v. Jackson, 240 F.3d 1245, 1249 (10th Cir. 2001) (rejecting defendant's Apprendi-based request for a new trial or resentencing where she stipulated to a drug quantity so that "drug type and quantity were no longer facts required to be determined by the jury"), overruled in part on other grounds by United States v. Prentiss, 256 F.3d 971, 981 (10th Cir. 2001) (en banc); United States v. Champion, 234 F.3d 106, 110 (2d Cir. 2000) ("[E]ven if the district court

9

erred by arrogating to itself the quantity-determining function, any such error was surely harmless.  Under the stipulation, a jury could not have found differently.  Because [the defendant] stipulated to the fact that his crime involved over 2.6 kilograms of heroin, under 21 U.S.C. § 841(b)(1)(A), he would have been subject to a mandatory minimum sentence of 10 years, in any event.") (footnote omitted).

At trial Malone agreed to two stipulations about the drug quantity involved in the conspiracy.  First, he stipulated that 537.5 kilograms of cocaine were seized from the boat that another conspirator had commissioned to transport cocaine from the Bahamas to Miami.  Second, he stipulated that 39.75 kilograms of cocaine were seized from a golf bag that he had indisputably transported when the boat's cargo was unloaded in Miami.  Given those two stipulations, no reasonable jury could not have found that the conspiracy involved less than five kilograms of cocaine or that less than that amount could be attributed to Malone.  We therefore conclude that the Alleyne error that occurred in this case was harmless beyond a reasonable doubt.

## B.  Alleged Conflict of Interest

After Malone was returned to the United States in 2012, a pretrial hearing was held in which a magistrate judge appointed a federal public defender to

represent him.  On appeal, Malone contends for the first time that the appointment was error because the federal defender allegedly had a conflict of interest.[3]

In order to establish a Sixth Amendment violation, a defendant who did not object to the appointment of counsel "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."  United States v. Novaton, 271 F.3d 968, 1010 (11th Cir. 2001).  This requires satisfying a two-pronged test. See id.  First, he must demonstrate an "actual conflict" by "mak[ing] a factual showing of inconsistent interests or point[ing] to specific instances in the record to suggest an actual impairment of his or her interests."  Id. at 1010–11 (quotation marks omitted).  Second, he must prove an "adverse effect" by showing (1) that some plausible alternative defense strategy might have been pursued, (2) that the alternative strategy was reasonable under the facts of the case, and (3) that a causal link existed between the actual conflict and the decision to forego the alternative defense strategy.  Id. at 1011.

---

[3] At the pretrial hearing when Malone was appointed counsel, the magistrate judge asked the courtroom clerk whether the Federal Defender's Office would have a conflict representing Malone.  One of Malone's codefendants had been represented by a federal defender twenty-two years before during the 1990 proceedings, but the clerk responded to the judge's question by mistakenly stating that retained counsel had represented all of the codefendants then.  The AUSA was not aware of any conflict that would result from appointing a federal defender to represent Malone.

In this case, even assuming that Malone has shown an actual conflict of interest, he has failed to demonstrate any adverse effect from the fact that he was represented by a federal defender in 2012.  More specifically, he has failed to identify any alternative defense strategy, let alone a reasonable one, that his attorney could have pursued in the 2012 proceedings.  As a result, this challenge fails.  See id. at 1010.

## C.  Imposition of Consecutive Sentences

Malone contends that the district court violated Application Note 3 of U.S.S.G. § 2J1.6 when it sentenced him to a consecutive 22-month term of imprisonment on the failure to appear charge.  See United States v. Kinard, 472 F.3d 1294, 1297 (11th Cir. 2006) ("[W]e must interpret the text of the Guidelines in light of the corresponding Commentary and Application Notes, which are binding on the courts unless they contradict the plain meaning of the text of the Guidelines.") (quotation marks omitted).  Under that application note, when a defendant is convicted on both a failure to appear charge and an underlying offense, the advisory sentence is to be calculated by grouping the two offenses under U.S.S.G. § 3D1.2(c) and applying an enhancement to the base offense level by treating the failure to appear charge as an obstruction of justice, which warrants a 2-level enhancement under § 3C1.1.  U.S.S.G. § 2J1.6 cmt. n.3.  That is exactly

12

what the district court did in this case.  Malone argues however that the court should have concluded that the punishment for his failure to appear charge was already accounted for in his advisory guidelines range (based on the § 3C1.1 enhancement), and that the court erred by imposing what he calls an "unwarranted guidelines enhancement" in the form of a consecutive sentence on the failure to appear count.

We need not decide this issue because Malone invited the error, if any, in imposing a consecutive sentence.  See, e.g., United States v. Harris, 443 F.3d 822, 823–24 (11th Cir. 2006) ("The doctrine of invited error is implicated when a party induces or invites the district court into making an error.  Where a party invites error, the Court is precluded from reviewing that error on appeal.") (quotation marks and citation omitted).  Before the district court announced Malone's sentence, his attorney stated:  "[W]ith respect to any sentence that should follow because of [Malone] being a fugitive with respect to the failure to appear, I would ask that the court limit that to just an additional month in light of the fact that he [will be] serving a minimum mandatory of 20 years [on the drug conspiracy count]" (emphasis added).  Although Malone did not invite the court to impose a 22-month sentence on the failure to appear count, he unequivocally invited the district court to sentence him to an additional term of imprisonment on that count.

13

And the law is clear that any prison term imposed on the failure to appear count had to be served consecutively to any other term of imprisonment the district court imposed. 18 U.S.C. § 3146(b)(2). Malone cannot now claim for the first time that the district court erred by imposing any sentence on the failure to appear count or by running it consecutively. See, e.g., Harris, 443 F.3d at 823–24; Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1293–94 (11th Cir. 2002); United States v. Ross, 131 F.3d 970, 988 (11th Cir. 1997).

### D. Incomplete Appellate Record

While this appeal was pending, Malone ordered transcripts for the last two days of his 1990 trial, which is when the closing arguments and jury deliberations occurred. Those were also the two days that Malone missed when he jumped bond and failed to appear in court. The court reporter was unable to produce transcripts for those two days, however, because he was unable to locate notes for the proceedings that occurred 22 years earlier. Malone contends that we must remand this case to the district court for purposes of reconstructing the record of the final two days of the 1990 trial.

We decline to do so for two reasons. First, there was no violation of the Court Reporter Act, which provides that a court reporter shall file his "original shorthand notes or other original records" with the clerk of the court "who shall

14

preserve them in the public records of the court <u>for not less than ten years</u>."  28

U.S.C. § 753 (emphasis added).  Here, Malone's transcript request came 22 years

after the original records were made, and the delay in his request for the records

was entirely due to his decision to evade justice for more than two decades.  We

have held that "[w]hen a portion of a record is lost through no fault of the

defendant, he should not be made to bear the burden of the loss."  <u>United States v.</u>

<u>Ullrich</u>, 580 F.2d 765, 773 n.13 (5th Cir. 1978).[4]  But a defendant who flees justice

and stays on the run for 22 years has only himself to blame for part of the record

being lost in that long interval.  He should be made to bear the burden of the loss

he caused.  Second, a defendant is not entitled to relief in any event unless "there is

a substantial and significant omission from the trial transcript" and a defendant's

appellate counsel is not the same as his trial counsel.  <u>See</u> <u>United States v. Charles</u>,

313 F.3d 1278, 1283 (11th Cir. 2002).  The part of the transcript covering the

closing arguments and the proceedings surrounding the jury deliberations does not

involve "substantial and significant" portions of the trial.  The trial went on not for

a couple of days but for 21 days.  Malone has not plausibly suggested any error

that occurred during the last two days and merely speculates that he may have

---

[4] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

15

suffered prejudice if his "absence was considered by the jury during its deliberations."  Under these circumstances, Malone is not entitled to relief.  See United States v. Preciado-Cordobas, 981 F.2d 1206, 1214 (11th Cir. 1993) ("Mere speculation, entirely unsupported or contradicted by the record, that error may have been committed during an unrecorded part of the trial simply is not enough to support a finding that omissions are substantial and significant."); United States v. Stefan, 784 F.2d 1093, 1102 (11th Cir. 1986) (refusing to reverse a conviction where the transcript for a bench conference was not available because the conference was not "substantial and significant" given that the trial involved a "long and complex case").  Not only that, but if the jury in convicting him did consider the fact that he had absconded from the trial, whose fault is that?  It would not have been reversible error.  See United States v. Williams, 541 F.3d 1087, 1089 (11th Cir. 2008) ("Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt.") (quotation marks omitted); United States v. Wright, 392 F.3d 1269, 1277–78 (11th Cir. 2004) (noting that "we agreed with other circuits that universally accepted a defendant's flight, escape, resistance to arrest, concealment, assumption of a false name, and related conduct as admissible evidence of consciousness of guilt, and thus of guilt itself") (quotation marks and emphasis omitted); United States v. Watson, 866 F.2d 381, 385 (11th

16

Cir. 1989) ("Evidence of flight is admissible to prove consciousness of guilt for the underlying offense."); United States v. Beard, 775 F.2d 1577, 1581 (11th Cir. 1985) ("There is no question that evidence of flight can raise a permissive inference of consciousness of guilt of the crime charged.").

   **AFFIRMED.**